BROWN, et al, Appellants, v. DAKOTA PUBLIC SERVICE CO., et al, Respondents. (SCHIRBER, et al, Intervenors and Respondents.)

(299 N. W. 569.)

(File No. 8426. Opinion filed August 15, 1941.)
Rehearing Denied September 27, 1941.

**W. M. Potts,** of Mobridge, and **Byron S. Payne,** of Pierre, for Plaintiffs and Appellants.

**Martens & Goldsmith,** of Pierre, for Defendant and Respondent.

**O'Keeffe & Stephens,** of Pierre, for Intervenors and Respondents.

BECK, Circuit Judge. This cause involves an election contest instituted by appellants, as electors and taxpayers of the City of Mobridge, under the provisions of SDC Chapter 16.19. The picture in the background, as gathered from the record, is briefly as follows:

Prior to 1939, a utilities company known as the Northern Power and Light Company had been operating at Mobridge, South Dakota, under a franchise permitting said company to maintain equipment upon the streets and alleys of said city, and to engage in the business of vending electric light, heat and power. Such franchise expired in the year 1937, but said company continued to operate in said city after the expiration of its franchise. This company operated extensively in both North Dakota, and South Dakota, and maintained a district office in the City of Mobridge. It had invested large sums of money in equipment used in the said city, and employed approximately forty men in connection with its business and operations at Mobridge.

On June 5, 1939, said company submitted to the City Council of Mobridge, a proposed franchise ordinance and applied for its adoption. This ordinance was approved by the City Council and submitted to the electors of said city at a special election held on August 8, 1939. At said election the vote was 593 for the franchise and 643 against it. The Northern Power and Light Company paid the expenses of this election. At a subsequent date, the said company merged with another company, and thereafter the business was conducted by the Dakota Public Service Company, respondent herein as successor to the Northern Power and Light Company.

After the election of August 8th, certain civic organizations, business men and citizens of Mobridge, became interested in having the matter again submitted to the voters of said city, and petitioned the City Council to resubmit the franchise issue. A copy of this petition was published in a local newspaper and contained the statement: "We have

furnished the company with a copy of this petition and asked them if they would present and submit an ordinance at this meeting, and to pay all the expenses of a special election if the matter is again submitted to the voters."

On September 5, 1939, the respondent Company applied to the City Council of Mobridge, for the granting of a franchise to it, in substantially the same form as applied for by its predecessor. The franchise ordinance was approved by the City Council and a second special election called to be held November 7, 1939. At this election, the vote, as canvassed, was 712 votes in favor of the franchise and 657 against it. The City Council determined that the ordinance had been adopted.

Within the time allowed by law, the appellants, as taxpayers and electors of the City of Mobridge, with the consent of the Circuit Court instituted this proceeding, making the power company and the city defendants. Certain other taxpayers and electors were permitted to intervene as defendants. Issue was joined and the case was tried and a judgment of dismissal entered. An appeal was taken from such judgment.

The appellants have incorporated in the record eighteen assignments of error, which raise but three general questions of law and fact, that we deem worthy of consideration.

It is first contended that the respondent public service company's predecessor, having paid the expenses of the first election; and it having been stated in the published petition asking for the second election that the company would be asked to pay the expense of such election, that it must be inferred that the company agreed to pay the expense of the election in question; and that this amounted to fraud and bribery and should be held to render the election void.

A careful examination of the record fails to reveal any promise on the part of the respondent company to pay the expenses of the second election; on the other hand, the record affirmatively shows it has not paid the same, nor have we been able to discover any statute or rule of established public policy that has been violated by the respondent in connection with such election.

■ It is next contended that the election should be declared void because of conduct on the part of election workers amounting to fraud, bribery and coercion. This was a very heated election. Workers on both sides manifested great activity and enthusiasm. Upon examination of the record, we fail to find, however, any acts or conduct upon the part of the workers on either side that amounted to fraud, corruption or coercion. The trial court has found, in effect, there was none, and such finding finds ample support in the record. We find no merit in such contention.

The remaining and more serious contention of appellants involves a construction of the statutes relating to absentee voters. The ultimate question to be determined is: Should such statutes be held to be directory or mandatory?

The election boards accepted and canvassed a total of 1369 votes, of this number, 239 were cast under the provisions of SDC 16.0606. This statute provides that an elector who expects to be absent from his home precinct on election day or who, because of illness or some physical disability is unable to attend the election, may vote an absentee ballot; and further provides that such elector may, after a specified time, apply for a ballot to be sent to him, at a designated place in a sealed envelope, or to be delivered to him personally. The statute further provides: "Such application for official ballot shall be in writing, subscribed by the applicant, and filed with such auditor or clerk, and may be made by letter or upon blanks furnished by the auditor or clerk, who shall preserve a record of the name, post office address, and voting precinct of each applicant and shall send each such written application by registered mail to the superintendent of the election board of the home precinct of the applicant named therein. Such application need follow no specified form but must be sufficient in substance to show the identity and residence of the applicant, that he expects to be absent from his voting precinct on such election day, or will be unable to attend his voting precinct on such election day, or will be unable to attend his voting precinct on account of illness or other physical disability and desires and intends to vote at such election; and

in such application the applicant shall state the place to which he desires such ballots sent by mail. Upon receiving such application from a duly registered elector, the auditor or clerk shall inclose one of each of the official ballots in an envelope together with a return envelope upon which shall be printed in bold type the words 'Official Ballot to be voted at _____ precinct, in _____ county, South Dakota, at the _____ election to be held therein on the _____ day of _____, 19____,' and such envelope shall then be sealed, and if not delivered to the bearer of the application, or to such applicant personally, shall be forthwith deposited in the post office by such auditor or clerk, addressed to such applicant at the place stated in his application, with postage prepaid thereon. *  *  *"

The statute also requires that a notary certificate, voter's affidavit and identification slip be also included with the ballots.

SDC 16.0607 provides for the manner of voting and directs that the ballots when voted shall be transmitted to the several superintendents of election.

The record in this case establishes that the general practice followed was to deliver official ballots and other necessary documents to election workers, without any application of any kind having been filed with the city auditor. No record was made by the city auditor of any applications received by him; and no such record was available for public inspection. Election workers, armed with a liberal supply of ballots and other necessary documents, called upon voters and had them sign applications and, at the same time and as a part of the same transaction, mark their ballots, sign the identification slips and other papers and they were then enclosed in the return envelope and sealed up, except the application and one identification slip were not placed in the envelope, but were attached thereto. The envelopes were handed to such workers who delivered the fruits of their labor to the city auditor, who in turn delivered the same to the election boards on election day. Little or no attention was paid to the provision limiting the privilege of

voting in this manner to absentees or persons physically unable to attend the election; and little heed was given to the secrecy of the ballots.

The record affirmatively shows that more than enough voters voting for the franchise, voted in the same manner above mentioned, to wipe out the majority for the franchise, if the court concludes that such votes were void.

This court said in Olson v. City of Lemmon, 33 S. D. 380, 146 N. W. 592, 593: "It seems to be the general rule that votes of innocent electors are not invalidated by mere irregularities on the part of public officers charged with the duty of preparing and procuring official ballots, where such irregularities have not prevented a free and fair popular vote, or where the substance of no essential requirement of the law has been violated, unless the Legislature has expressly so declared."

In Fullerton v. Smizer, 51 S. D. 320, 213 N. W. 730, 731, this court affirmed the rule, above set forth, in the following language:

"The rule to be applied in the consideration of all the questions presented on this appeal is tersely stated in 20 Corpus Juris at page 181, in the following language:

" 'Statutes giving directions as to conduct of elections will be construed by the courts as directory, unless noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result'."

The following South Dakota cases support the rule above stated: Tuntland v. Noble et al., 30 S. D. 145, 138 N. W. 291, Ann. Cas. 1915A, 1004; Mueller v. Holter, 46 S. D. 535, 194 N. W. 844; Higgins v. Gray, 54 S. D. 488, 223 N. W. 711; Cameron v. Babcock, 63 S. D. 554, 262 N. W. 80, 101 A.L.R. 650.

It was the latter case, above cited that the trial court relied upon in holding that all of the provisions of our absentee voter statutes should be held directory rather than mandatory. In the Cameron case, this court had under consideration the registration laws of the state then in force (Sections 7079 to 7082, inclusive of the 1919 R. C., as am-

ended by Chapter 144 of the Laws of 1931). This court held that in the event a voter failed to register and his ballot was accepted by the election board without requiring the statutory affidavit, that if the right of such elector to vote was not challenged until after election, the rule above stated should be applied.

We believe that this court correctly held that a more liberal rule should apply where a vote is challenged after the election than if challenged before such vote is cast. We also think that the court, to a large degree, was dealing with a situation in the Cameron case involving the joint acts and responsibility of both the voter and the election officials. In any event, the registration statutes in substantially the same form were re-enacted by the legislature after the decision was handed down in Cameron v. Babcock, supra, and it must be presumed that the legislature intended to re-enact such law as construed by this court. This decision must stand as the law, so far as the registration statutes are concerned. See 59 C. J. 1061, Sec. 625; Smiley v. Armstrong, 66 S. D. 31, 278 N. W. 21.

If, however, the Cameron case is to be construed as establishing the rule that all of the election laws of this state are merely directory, as to the acts and duties of the elector, if not challenged until after the election, then we are of the view that such rule should be modified as to all of the election laws of the state except the registration statutes.

We approve the following rule stated in McCrary on Elections, 4th Ed., Sec. 724: "The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election. The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the elector are in the interest of pure elections, and should be complied with at

least in substance, but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators."

This rule finds support in the following cases: Moyer v. Van De Vanter, 12 Wash. 377, 41 P. 60, 29 L. R. A. 671, 50 Am. St. Rep. 900; Stepp v. Board of Canvassers of Mingo County et al., 98 W. Va. 41, 126 S. E. 708; State ex rel. Symmonds v. Barnett, 182 Wis. 114, 195 N. W. 707; Harrington v. Crichton, 53 Mont. 388, 164 P. 537; King v. McMahan, 179 Ky. 536, 200 S. W. 956; Davis v. Board of Education, 186 N. C. 227, 119 S. E. 372; Davis v. Walcott, Tex. Civ. App., 96 S. W.2d 817.

This court recognized the rule above set forth in Higgins v. Gray, supra.

█ █ We believe the correct rule and the one to be applied under all of the election laws is: That so far as the acts and duties of the elector are concerned, he must substantially comply with the requirements of the election statutes if he is to cast a valid ballot; on the other hand, he should not be disfranchised by the mere negligence or omissions of election officials; and that the election statutes so far as the acts and duties of such officials are concerned, should be held to be directory unless otherwise expressly declared by statute, or it is made to appear that such acts and conduct affected the merits of the election and prevented an honest and free expression of the will of the voters. This rule, however, cannot be applied to the registration statutes, in its broadest application for the reasons hereinbefore stated.

█ Voters voting under the provisions of the absentee voter statutes exercise a privilege not enjoyed by the electors who go to the polls and vote on election day. They should be required to strictly comply with the requirements of the statute in order to prevent fraud and preserve the purity and integrity of elections. We approve the language of the New York Court in In re Baker, 126 Misc. 49, 213 N. Y. S. 524, 528, as follows: "This absentee vote statute is in derogation of the general Election Law and should be

strictly construed. Its provisions should be rigidly adhered to; otherwise the repeater, floater, and non-resident are given a free hand to gain results satisfactory to themselves. * * * The voter, wishing to cast an absentee vote, must comply with all the statutory demands, and the power of the board of elections is held within those lines. * * * It cannot pass out absentee ballots at the mere asking. This would make fraud and vote buying too easy."

We conclude that the absentee voter statutes, so far as the acts and duties of the voter are concerned, are mandatory and a failure to substantially comply with such statutes on the part of such voter renders his vote void. This rule is supported by the great weight of authority. The following are some of the leading cases supporting this view: In re Baker, supra; Wichelmann v. City of Glencoe, 200 Minn. 62, 273 N. W. 638; Bullington v. Grabow, 88 Colo. 561, 298 P. 1059; Guice v. McGehee, 155 Miss. 858, 124 So. 643, 125 So. 433; Sawtelle v. Dunn, Tex. Civ. App., 120 S. W.2d 130; Torkelson v. Byrne, 68 N. D. 13, 276 N. W. 134, 113 A. L. R. 1213; Rasp v. McHugh, 121 Neb. 380, 237 N. W. 394; Wheelock v. Haney, 138 Neb. 547, 293 N. W. 418; Werber v. Hughes, 196 Ind. 542, 148 N. E. 149. Also see notes 14 A. L. R. 1266, 19 A. L. R. 308, 35 A. L. R. 820, and 121 A. L. R. 942.

The reasoning in Goodell v. Judith Basin County, 70 Mont. 222, 224 P. 1110; and State ex rel. Pemberton v. Superior Court of Whatcom County, 196 Wash. 468, 83 P.2d 345, relied upon by respondents, is largely in accord with the views expressed in the cases above cited.

The record shows conclusively that more than fifty-five absentee voters, who voted for the franchise, filed no written applications for their ballots with the City Auditor before voting, and that they received and voted ballots that had not been delivered to them in the manner provided by law. We are persuaded that all of such votes were void and should not have been counted.

The judgment is reversed with directions to the trial court to enter judgment sustaining the contest.

BECK, Circuit Judge, sitting for RUDOLPH, J., disqualified.

POLLEY, P.J., and ROBERTS, J., concur.

WARREN and SMITH, JJ., dissent.