RAYMOND D. HAGGARD, APPELLEE, V. RALPH E. MISKO ET AL.,
APPELLEES, IMPLEADED WITH ROBERT KEEFE ET AL.,
APPELLANTS.

83 N. W. 2d 483

Filed June 7, 1957. No. 34149.

*Roderick R. Perry* and *Herman Ginsburg,* for appellants.

*Gerald F. Beaver,* for appellee Haggard.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an election contest to determine the validity of a bond election held by the school district of the City of York, Nebraska. The trial court found that there were 14 illegal ballots cast, that one mail ballot cast was not in accordance with law, and that the remaining 38 absentee and disabled voters' ballots were

invalid and should be rejected because of irregularities in the conduct of the election. These findings resulted in a decree to the effect that the bond election failed to receive the required vote and that the proposed bond issue should be declared lost. Three contestees and one elector whose ballot was rejected have appealed.

On May 16, 1956, the school district held an election to secure authorization for the issuance of bonds in the amount of $575,000 for the purpose of purchasing a site and constructing and furnishing additional school buildings for the district, and to authorize a special levy of taxes for the payment of such bonds. The board of education of the district, sitting as an election canvassing board, found and declared that 1,603 ballots had been cast for the proposition and that 1,305 ballots had been cast against it. The board thereupon declared the election had carried by 55 percent of the legal votes cast at the election, as required by section 10-702, R. R. S. 1943.

The appellee Haggard instituted a contest of the election under section 32-1001, R. R. S. 1943, the statutory grounds therein relied upon being as follows: "(5) when illegal votes have been received or legal votes rejected at the polls sufficient to change the result; (6) for any error in any board of canvassers in counting the votes, or in declaring the result of the election if the error would change the result; * * *."

The finding of the trial court that there were 14 illegal votes cast, 6 of which were cast for and 8 against the bond issue, is not questioned by this appeal. This has the effect of reducing the number of votes admittedly legal which were cast for the bond issue by 6 and those cast against it by 8. In view of the fact that the one mail ballot cast cannot change the result of the election, we shall not review the trial court's finding that it should be rejected. The only issue remaining is whether or not the trial court properly rejected the remaining 38 absentee and disabled voters' ballots. The record shows that of these 38 ballots, 32 voted for the

bond issue and 6 voted against it. If the absentee and disabled voters' ballots were properly rejected, the election failed of the required majority. If such votes were entitled to be counted, the election carried by the required majority.

Of the remaining 38 absentee and disabled voters' ballots, 11 were cast by disabled voters and 27 by voters who appeared in person and cast their ballots in the presence of the city clerk. As to the 11 disabled voters, the record shows that each disabled voter appointed an agent who appeared before the city clerk and procured an application, the identification envelope, and a ballot. The agent took the ballot to the disabled voter's home where it was voted in the presence of the agent without his being able to see how it was marked. The ballot was placed in the envelope, sealed, signed, and notorized. The ballot was then returned to the city clerk by the agent. All disabled voters' ballots were handled in substantially the same manner. No objection appears to have been made by the contestant to this manner of handling. The 27 absentee ballots cast in person were handled in the following manner: The voter appeared personally at the office of the city clerk, made application for an absentee ballot, voted in the presence of the city clerk, caused the ballot to be sealed in the proper envelope, and signed it and swore to it before the city clerk. Contestant does not appear to object to this method of handling.

The primary question is whether or not the failure of the city clerk and the school board to comply with statutory requirements in the handling of the 38 absentee and disabled voters' ballots has the effect of invalidating such ballots. It is contended that the city clerk failed to enter the names of absentee and disabled voters, together with their post-office addresses, residences, and voting precincts, in a poll book as required by section 32-807, R. R. S. 1943. It is contended also that the city clerk failed to give the 48-hour notice of the time

the school board would sit as a canvassing board to canvass absentee and disabled voters' ballots, as required by section 32-814, R. R. S. 1943. Many similar contentions are advanced as to claimed irregularities in conduct of the city clerk and the school board in the canvassing of the ballots, the certification of poll books, the custody of ballots cast, and the like. All are controlled by the same rules of law and will be considered together. We shall not determine whether or not all the statutes cited apply to a school bond election. We shall assume solely for the purpose of this case that they do.

The evidence shows that the city clerk made up a list of all absentee and disabled voters and gave written notice thereof to each election board. There is no contention that any fraud existed. It is not disputed that the city clerk failed to post the 48-hour notice required by section 32-814, R. R. S. 1943; nor is it disputed that the school board met on the evening of election day and counted the absentee and disabled voters' ballots. The evidence shows further that the school board convened on May 21, 1956, and canvassed the vote without a notice having been posted.

The right of absentee and disabled voters to cast their ballots at an election is purely statutory. A statute conferring such a right will be strictly construed and its provisions are mandatory as to a voter desiring to exercise such right. McMaster v. Wilkinson, 145 Neb. 39, 15 N. W. 2d 348, 155 A. L. R. 667; Miller v. Mersch, 152 Neb. 746, 42 N. W. 2d 652.

The provisions of statutes which affect the mode and manner of conducting the details of an election are directory only and not mandatory, and a departure from the prescribed method will not vitiate the ballot of a voter who has complied with the mandatory provisions of the statute applicable to him. State ex rel. School Dist. No. 2 v. Marsh, 108 Neb. 749, 189 N. W. 283; Wheelock v. Haney, 138 Neb. 547, 293 N. W. 418; McMaster v. Wilkinson, *supra*.

In order to give effect to the will of the majority and to avoid the disfranchising of legal voters, the courts have uniformly held statutory provisions regulating the conduct of elections to be formal and directory when they are not essential to a fair election, unless such provisions are made mandatory by the statute itself. The rules provided by statute for the conduct of elections are designed to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain the results with certainty. State ex rel. Waggoner v. Russell, 34 Neb. 116, 51 N. W. 465, 15 L. R. A. 740, 33 Am. S. R. 625. It is not the policy of the law to disfranchise voters who have complied with the mandatory provisions of the law because of the mistakes, negligence, or misconduct of election officials. It is firmly established in our law that votes will not be rejected where election officials have failed to comply with the directory provisions of the election laws, if there is no fraud. The rule is summarized in 18 Am. Jur., Elections, § 225, p. 332, as follows: "It may, therefore, be stated as a general rule that if ballots are cast by voters who are, at the time, qualified to cast them and who have done all on their part that the law requires of voters to make their voting effective, an erroneous or even unlawful handling of the ballots by the election officers charged with such responsibility will not be held to disfranchise such voters by throwing out their votes on account of erroneous procedure had solely by the election officers, provided the votes are legal votes in their inception and are still capable of being given proper effect as such."

The 38 absentee and disabled voters whose ballots are here questioned were legal voters of the district. They have complied with the mandatory provisions of the statute in the exercise of their right to vote. They have committed no fraud nor any other wrongful act. Their right to vote under such circumstances cannot be defeated by the mistakes of election officials, nor by the

latters' disregard for the directory provisions of the election laws.

The record shows that at least 32 of the absentee and disabled voters' ballots were cast in favor of the bond issue and that no more than 6 ballots were cast against it. We conclude, therefore, that, after deducting the 14 invalid ballots and the one rejected vote by mail, the final result is 1,596 votes for and 1,297 votes against the bond issue. Since the vote for the bonds was in excess of 55 percent of the total vote cast at the election, the proposition carried in the manner required by law.

The trial court was in error in not so finding. The judgment of the district court is reversed and the cause remanded with directions to enter a judgment finding that the election was valid and that the bond issue carried by the majority vote required by law.

REVERSED AND REMANDED WITH DIRECTIONS.