Keith LARSON, Clarence Erickson,
Ernest Alibee and Harlow Holler,
Plaintiffs and Respondents,

v.

Virgil LOCKEN, Defendant
and Appellant.

No. 12175.

Supreme Court of South Dakota.

Argued Nov. 28, 1977.

Decided Feb. 8, 1978.

Duane Thurow of Thurow, Thurow & Cutler, Aberdeen, for plaintiffs and respondents.

Jerald M. McNeary, Aberdeen, for defendant and appellant.

MORGAN, Justice.

This is an appeal from a final judgment ordering that the ballots cast in the election of October 26, 1976 for Director of Area IV of the West Brown Irrigation District be disallowed and declared null and void and that a new election be held for the Director's position between Virgil Locken and Keith Larson. We affirm that decision.

The canvass of the votes resulted in fifty-four (54) votes for Locken the incumbent and fifty-one (51) votes for Larson. Larson, alleging that the appellant Locken, his supporters and election officials committed various election irregularities and violations of voting statutes, contested the election and brought suit under SDCL 12–22. Trial was had to the court and based on its findings of fact and conclusions of law the trial court ordered a new election. The execution of this judgment was stayed on March 25, 1977, pending this appeal.

This case was brought before this court as an election contest under SDCL 12–22.[1] As set forth in SDCL 12–22–1, the purpose of an election contest is to challenge the determination of any election. The basic question in an election contest is whether the election, despite irregularities in its conduct, resulted in a free and fair expression of the will of the voters on the merits.[2] Therefore, based on the record before us, this court can only make the determination whether this election was a free and fair expression of the will of the voters and cannot in the alternative decide whether to disallow some invalid votes, but maintain the election.

The acts and conduct complained of by Larson and found to be fact by the trial court were related exclusively to absentee voting and consisted of the following circumstances:

A. On October 25, 1976, the night before the election, while the candidate Virgil Locken was present in an adjoining room at the James Hundstad residence, at least one voter, Irene Swenson, cast an absentee ballot for the office of director of West Brown Irrigation District. The trial court found a violation of SDCL 12–19–7.1, but no bad faith or fraud on the part of the defendant Locken concerning his presence at the Hundstad residence.

B. The defendant, on the day of the election, delivered three absentee ballots that had been notarized by Frank Dixon, to the polling place in Bath, South Dakota. This was coupled with the fact that several other absentee ballots were delivered to election officials by individuals other than the absentee voter or the officer referred to in SDCL 12–19–7.

C. It was the general practice not to give receipts to voters who delivered their absentee ballots to the home of James Hundstad, the secretary of West Brown Irrigation Board, which was contrary to SDCL 12–19–9.

D. The evidence also shows that blank absentee ballots were given out by Hundstad without first receiving written applications for said ballots, including four such ballots which were given to the appellant. Receipts were not given to the appellant and no list was kept of those persons picking up blank absentee ballots.

1. An election contest differs from an appeal of a recount. Under SDCL 12–21 a candidate can request a recount and dispute certain ballots. If it is the intent of the defeated candidate or electors to have certain ballots declared void, they must follow the procedure as established by SDCL 12–21–27, 28. In State ex rel. Olson v. Thompson, (N.D.), 248 N.W.2d 347 (1976) the North Dakota Supreme Court concluded that a recount was not the same as contesting an election. The reason being was that the recount, clearly and unmistakably, if requested and made, was now a part of the election process; whereas, an election contest is a challenge of the election process itself.

2. Green v. Independent Consolidated School District No. 1, 252 Minn. 36, 89 N.W.2d 12, (1958).

E. It was also shown that various ballots and return envelopes were not properly notarized though each envelope contained a properly signed and notarized affidavit. Also, there were several written applications that did not identify their respective voting precinct, their places of permanent residence, nor the reason for being unable to attend the polling place on election day, which is contrary to SDCL 12–19–2.

F. When counting the absentee ballots, the election officials removed the security envelope containing the absentee ballot from the outer absentee voter envelope, and then all of the security envelopes were stamped with the official stamp of the election board and placed into the ballot box. However, the absentee ballots, when removed from their envelopes by election officials, were not stamped with the official stamp as were the ballots cast on election day.

The purposes of absentee voting statutes are to allow those voters who are unable to attend the polling place on election day for specified reasons the opportunity to exercise their fundamental right of voting; to prevent fraud; and to achieve a reasonably prompt determination of the result of the election.[3] It is not the policy of the law to disfranchise voters, because of election officials' mistakes, negligence, or misconduct, who have complied with the mandatory provision of the law.[4] However, this court also has stated in *Brown v. Dakota Public Service Co.*, 68 S.D. 169, 177, 299 N.W. 569 (1941) that voters who vote under the provisions of the absentee voter statutes exercise a privilege not enjoyed by the electors who go to the polls and vote on election day. Consequently, because of this privilege they are required to strictly comply with the requirements of the statute in order to prevent fraud and preserve the purity and integrity of the elections.

In dealing with previous cases involving violations of absentee voting statutes, this court has categorized these statutes into two separate classes: directory or mandatory.[5] The difference between directory and mandatory as stated in *Sommerfeld v. Board of Canvassers*, 269 Wis. 299, 69 N.W.2d 235 (1955) is primarily in the consequences of nonobservance—that an act done in violation of a mandatory provision is void, while an act done in violation of a directory provision, while improper, may nevertheless be valid and constitute a mere irregularity not vitiating the election.

In *Brown* this court stated the rule to be applied in construing election laws:

That so far as the acts and duties of the elector are concerned, he must substantially comply with the requirements of the election statutes if he is to cast a valid ballot; on the other hand, he should not be disfranchised by the mere negligence or omissions of election officials; and that the election statutes so far as the acts and duties of such officials are concerned, should be held to be directory unless otherwise expressly declared by statute, or it is made to appear that such acts and conduct affected the merits of the election and prevented an honest and free expression of the will of the voters.

Thus, the main issue which must be decided in this case is whether the trial court erred in its determination that there had been substantial violations of the South Dakota absentee voting statutes which, viewed cumulatively, did not allow for a free and fair expression of the will of the voters. The respondent alleged and the trial court found that there had been violations of the absentee voting statutes and other election irregularities and therefore a fair election was not held and a new election was ordered. Appellant however argues that if there were violations, these violations were so technical that they did not affect the outcome of the election and in light of

---

3. *Bell v. Gannaway*, 303 Minn. 346, 227 N.W.2d 797 (1975).

4. *Haggard v. Misko*, 164 Neb. 778, 83 N.W.2d 483 (1957).

5. *Brown v. Dakota Public Service Co.*, supra.

SDCL 12–19–34 [6] the election should not be invalidated.

■ As a general rule, the statutory directions to the voter with respect to the time and manner of making applications for an absentee ballot, the manner of marking the same, the taking of the prescribed affidavit, and the return of the ballot, together with the affidavit, are regarded as mandatory and strict compliance therewith is required.[7] These provisions deal with the statutory requirements that a voter must follow in order to be eligible to cast an absentee ballot. The voter has absolute control over these activities and it is incumbent upon him to make sure that this procedure is followed to insure a valid vote.

In an election contest this court must determine whether there is sufficient evidence to support the trial court's findings of fact and conclusions of law and can only reverse the trial court's judgment if it is clearly erroneous.[8] Since the trial court was not clearly erroneous in its decision, we must affirm.

■ Based on the record and the findings of the trial court, we find that the trial court did not err in calling for a new election since the many irregularities and violations of statute did cast substantial doubt upon the validity of the outcome of the election. The record shows blatant violations of the mandatory provisions of the absentee voting statutes.

The fact that many absentee ballots were disbursed by the secretary of the district, before any application for such ballots had been received, including four to a candidate, appellant Locken, of which only three were returned, is a violation of the mandatory provisions of SDCL 12–19–2. In the *Brown* case this court held that this violation by itself was enough to declare the election void. Other jurisdictions have also held that a failure to properly apply for an absentee ballot will void the ballot or require a new election.[9]

It is also conceded that many of the applications for absentee ballots were filled out incompletely, incorrectly, and contrary to SDCL 12–19–2 in that they failed to identify the applicants' respective voting precinct, their places of permanent residence, or their reason for being unable to attend the polling place on election day. These requirements are also considered mandatory and failure to comply with such statutory procedure invalidates the absentee ballots.[10]

Coupled with the above violations, several absentee ballots were delivered by persons other than the absentee voter himself, or the officer administering the oath, contrary to SDCL 12–19–9. In fact, the appellant candidate, himself, delivered three ballots to the polling place in Bath, South Dakota. This also is a direct violation of a mandatory provision.[11] The candidate was also found to visit a polling place where absentee ballots were being cast, thus being in the presence of absentee voters at the time they were marking their ballots, contrary to SDCL 12–19–7.1.

The record shows that the absentee ballots when removed from their envelopes by election officials were not stamped with the official stamp of the election board as is required by SDCL 12–19–10. The fact that

---

**6.** SDCL 12–19–34 provides:

"No mere informality in the matter of carrying out or executing the provisions of this chapter shall invalidate the election or authorize the rejection of the returns thereof, and the provisions of this chapter shall be liberally construed for the purposes herein expressed or intended.

**7.** 26 Am.Jur.2d, Elections § 245, citing *Brown v. Dakota Public Service Co.,* supra.

**8.** SDCL 15–6–52(a); *Thoms v. Andersen,* S.D., 235 N.W.2d 898 (1975); *Ward v. Fletcher,* 36 S.D. 98, 153 N.W. 962 (1915).

**9.** *Sartwelle v. Dunn,* Tex.Civ.App., 120 S.W.2d 130 (1938); *Wood v. Diefenbach,* Fla., 81 So.2d 777 (1955); *Elliott v. Hogan,* Mo.App., 315 S.W.2d 840 (1958).

**10.** *Elliott v. Hogan,* supra; *Parra v. Harvey,* Fla., 89 So.2d 870 (1956).

**11.** *May v. Wilson,* 199 S.C. 354, 19 S.E.2d 467 (1942).

this is a violation committed by the misconduct of election officers and not by the voter is not controlling in this case.[12] SDCL 12–20–6 has specifically made mandatory the duty of an election official to affix the official stamp on the ballot. This court has so held in the cases of *Lingo v. Noonan,* 75 S.D. 442, 67 N.W.2d 779 (1954) and *Cahalan v. Terry,* 73 S.D. 531, 45 N.W.2d 460 (1950) that this duty is mandatory and that the failure to affix the official stamp to a ballot invalidates all such ballots. Therefore, all absentee ballots in this case must be considered invalid through the failure of affixing the official stamp onto them.

There were also a number of violations of the directory provisions of the absentee voting statutes. These included the failure to give receipts to the persons delivering the return envelopes contrary to SDCL 12–19–9; and the failure to cross-check affidavits and applications, contrary to SDCL 12–19–10. These violations combined with the violations of the mandatory provisions indicate the complete disregard for the statutory procedures regarding absentee voting as found in SDCL 12–19.

■ Appellant emphasizes the fact that the trial court concluded no fraud or bad faith was demonstrated by anyone involved in the election. Although fraud was not charged nor proven in this case, the candidate who delivered the ballots to the voters and stood by while they were being marked had ample opportunity to practice fraud and undue influence on the voters. It is the opportunity, irrespective of whether any fraud was committed or intended, that is sufficient ground upon which to invalidate the votes.[13]

The appellant feels that the subsequent enactment of SDCL 12–19–34 mitigates the harshness of the *Brown* decision. Even though we recognize that the legislative intent of SDCL 12–19–34 requires that minor violations of election laws should be looked upon liberally and that technical irregularities should not invalidate votes or elections, this court feels that in this case, to permit the handling of ballots in a manner which circumvents the plain purpose of the law, would constitute an invitation to fraud. Therefore, in this election one cannot condone the above actions by declaring them minor irregularities, and the only way to remedy this situation is not only to invalidate the absentee ballots, but to affirm the trial court order requiring a new election.

■ This court has given careful consideration to the remedy of requiring a new election. Since all the absentee ballots are invalid on their face due to the fact that they were not affixed with the official stamp, and consequently easily distinguishable from the other ballots, it would be possible to invalidate the absentee ballots and have the election stand and be determined by only those votes cast on election day at the polling place. There is support for this type of remedy in other jurisdictions.[14] However, considering that apparently one-sixth of the votes (16) cast in this election were absentee ballots and that the election consisted of only one hundred and five votes with only a three-vote difference, this court feels that to invalidate only the absentee ballots and allow the election to be determined by the remaining ballots would not allow for a free and fair expression of the will of the voters. Therefore, we affirm the trial court in its order for a new election.

■ Another issue that was raised was whether the trial court erred in finding that SDCL 12–20–32,[15] which is made applicable

---

12. SDCL 12–20–6 provides:
   "In the canvass of the vote any ballot which is not endorsed as provided in § 12–18–12 by the official stamp shall be void and shall not be counted."

13. *May v. Wilson,* supra.

14. *Parra v. Harvey,* Fla., 89 So.2d 870 (1956); the court held that since the illegal ballots were sufficient in number to alter the result, the election should be determined by the votes registered on the machines; *Ragan v. Burnett,* Ky., 306 S.W.2d 281 (1957); *Scott v. Kenyon,* 16 Cal.2d 197, 105 P.2d 291 (1940).

15. SDCL 12–20–32 provides:

by SDCL 46–12–21, had been violated since the ballot boxes and poll boxes were kept by the secretary of the district instead of the county auditor. However, controlling of this issue is the fact that this election is a special district election under SDCL 46–12. Under SDCL 12–1–1 the general election laws apply to all elections for state, district, and county officers *except* in cases where from the context of any statute a different intention plainly appears. We feel that in examining those statutes pertaining to elections regarding irrigation districts under SDCL 46–12, SDCL 12–20–32 is not applicable. It is the intent of the legislature that the secretary under SDCL 46–12 shall be given this responsibility of the county auditor in preserving the ballot boxes and poll boxes until the canvass is held. This limited applicability of SDCL 12–20–32 is consistent with other special elections such as school districts and municipal elections where other officers, clerks, and business managers respectively, are given the duty possessed by the county auditor. SDCL 9–13; 9–13–5; 13–7 and 13–7–5.

■ The appellant raises the issue of who, according to the election statutes, was the officer in charge of the election. The appellant contends that the secretary of the West Brown Irrigation District was correctly placed in charge, whereas the respondent, Larson, contended in his complaint that the Brown County Auditor should have been the officer in charge. SDCL 12–1–4(11) defines the "person in charge" as follows:

'Person in charge of an election,' or 'person charged with the conduct of an election,' the county auditor in all cases except local elections for a municipality, school district, township or other political subdivision, in which case it is the officer having the position comparable to the auditor in that unit of government if not specifically designated by law;

"It shall be the duty of the county auditor to keep the ballot boxes and pollbooks in the same condition as when received, until the meeting of the county canvassing board, when he shall deliver·the pollbooks to such board."

This court recognizes the fact that irrigation districts, as provided for by Title 46 of the South Dakota Codified Laws, are political subdivisions of the state. Therefore, the person having the position comparable to the auditor in the irrigation district is the person in charge of the election rather than the county auditor. In finding that the secretary of the district has the same functions under SDCL 46–12–29 and SDCL 46–12–36, as does the county auditor under SDCL 12–12–1 and SDCL 12–20–40, respectively, we hold that the trial court did err in rejecting the appellant's findings of fact and conclusions of law and should have found that the secretary of the district is the person in charge of an election. However, we find this harmless error in that it would not have affected any of the trial court's other conclusions of law and thus is not prejudicial to the rights of the appellant.[16]

DUNN, C. J., and WOLLMAN and ZASTROW, JJ., concur.

PORTER, J., dissents.

PORTER, Justice (dissenting).

The allegations of irregularity pertain *only* to the sixteen *absentee* ballots cast in the election. None of the absentee ballots bore an official stamp, SDCL 12–16–30, and all were therefore void. *Lingo v. Noonan,* 75 S.D. 442, 67 N.W.2d 779 (1954). The ballots cast in person on election day were officially stamped. Plaintiffs could have demonstrated in an appropriate proceeding, that the absentee ballots (all of which were counted) affected the outcome of the election, if that were so. However in the record now before us, there is no showing by respondents that the procedural irregularities had any effect on the election outcome. Under this record we have no basis to assume that the election result did not express the will of the voters.

16. *State Highway Commission v. Beets,* S.D., 224 N.W.2d 567 (1974); *Bean v. Best,* 77 S.D. 433, 93 N.W.2d 403 (1958).

The trial court did not find fraudulent conduct or bad faith on the part of appellant, the election winner. Thus, we need not reach the issue of the remedy to be afforded where the election process is permeated by fraud but the actual effect on the outcome cannot be precisely proven.

Violations of election statutes constitute a crime for which the person or persons involved may be individually prosecuted. See SDCL 12–26. However, we should not hold that an *election* may be set aside by the courts, in this instance, or on another day in an election in which thousands of votes were cast, absent evidence of fraud or bad faith or evidence that the prohibited conduct probably altered the election result.