This is an appeal from an order granting summary judgment in an election contest concerning the consolidation of the New Effington and Sisseton School Districts. We granted review of this case on an expedited basis on May 17, 1990. We affirmed the trial court's judgment by a written order dated July 10, 1990, noting therein that a written opinion would follow.
 FACTS
This is an election contest brought by two electors in the New Effington School District challenging the validity of an election held on February 20, 1990, approving a reorganization plan consolidating the New Effington and Sisseton School Districts. Both school districts are located in Roberts County, South Dakota. A majority of the voters of both districts approved the plan under which children in the New Effington School District would attend school in New Effington from kindergarten through sixth *Page 187 
grade and then would attend middle school and high school in Sisseton.
A simple majority of the voters in both districts is required to approve a consolidation plan. See SDCL 13-6-47. In the Sisseton School District, the voting margin was 602 in favor and 70 votes against consolidation. The voting margin in the New Effington School District was 243 votes in favor of consolidation and 231 votes against.
On election day, there were two polling places in the New Effington School District. One was in the Claire City fire hall and the other was the band room of the New Effington school. Each polling place had ballot boxes constructed of cardboard, secured with tape. Voting at these polling places took place on voting tables approximately three feet apart. There were voting booths available at the Claire City poll.
Poll watchers were present at the Claire City precinct but there were none at the New Effington precinct. The various poll watchers testified that although they could have seen, they did not in fact see how individual voters cast their votes. The poll watchers merely wrote down the names of who voted and kept a running total on the number of voters.
Rita Bisek is the business manager with the New Effington School District. She was in charge of overseeing the election. She has had no formal "election training." She testified that this election was essentially conducted the same as elections in years past. She testified that they had no prior complaints about election procedures in the district, and no one had contacted her prior to the election to discuss concerns about voter registration lists or election procedures.
There were a total of 39 absentee ballots cast in the New Effington district in the election. Sixteen were mailed to registered voters upon written request. Thirteen individuals voted in front of Bisek. Ms. Bisek and another person delivered absentee ballots to eight individual "shut-ins." One person called in for an absentee ballot and another appeared in person for one.
The appellants' original complaint raised four primary issues dealing with (1) ballot boxes; (2) canvassing of votes; (3) secrecy of the voting; and (4) whether or not voters who previously resided in the New Effington district, and many of whom still live in Roberts County, although now living in another precinct within the county, should have been allowed to vote in the New Effington precinct. The circuit court addressed all four issues and granted summary judgment to appellees on all four issues. At that hearing, the circuit court then allowed appellants to amend their complaint to raise the issue of irregularities in absentee balloting. Subsequently, the circuit court issued a memorandum decision, also finding in favor of appellees in regard to the absentee ballot issue.
 STANDARD OF REVIEW
This case is before this court on the granting of summary judgment. The parties concede there is no genuine issue as to any material fact. In these circumstances, we review summary judgments under the premise that affirmance is proper where there exists any basis which would support the trial court's ruling.Breen v. Dakota Gear Joint Co., 433 N.W.2d 221 (S.D. 1988) (citing Blote v. First Fed. Sav. Loan Ass'n, 422 N.W.2d 834, 836 (S.D. 1988); Uken v. Sloat, 296 N.W.2d 540, 542 (S.D. 1980)).
 ISSUE I
WHETHER THE FAILURE TO FOLLOW MANDATORY ABSENTEE VOTING PROCEDURES SHOULD INVALIDATE A SCHOOL CONSOLIDATION ELECTION WHEN THERE WAS SUBSTANTIAL COMPLIANCE WITH THE MANDATORY ABSENTEE VOTING REQUIREMENTS.
Appellants argue that the failure to follow mandatory absentee voting procedures should invalidate the election. They assert that the absentee voting affected the merits of the election and prevented an honest and free expression of the will of the voters. *Page 188 
In support of their argument, appellants assert that (1) twenty-three people failed to make written application requests for an absentee ballot, citing SDCL 12-19-2,[1] ARSD5:02:10:01; (2) sixteen written requests failed in one or more ways to satisfy the provisions of SDCL 12-19-2, in that they were not signed by the applicant, failed to state a voting precinct or place of voting residence, or the reason for which the ballot was requested; (3) sixteen of the alleged written requests were not stamped with the date they were received in the office of the person in charge of the election, citing SDCL 12-19-2; (4) none of the alleged written requests for absentee ballots were transmitted to the person in charge of the election (Bisek) in the proper envelope, citing ARSD 5:02:10:02; (5) in twenty-one instances, no written instructions were given to persons requesting to vote absentee, citing SDCL 12-19-3,[2] ARSD5:02:10:04; (6) in twenty-one instances, proper return envelopes were not used for the return of absentee ballots, citing SDCL12-19-3, ARSD 5:02:10:05; (7) there were twenty-one instances where the return envelope for the absentee voter's ballot failed to contain any affidavit whatsoever as required by SDCL12-19-4[3] and ARSD 5:02:10:05; (8) in twenty-one instances, the absentee voter failed to execute the required affidavit in the presence of a person authorized to administer oaths or take acknowledgments as required by SDCL 12-19-7;[4] (9) in twenty-one instances the absentee voter failed to seal an official return envelope with all enclosed ballots in the presence of a person authorized to administer oaths or take acknowledgments prior to *Page 189 
the delivery of the absentee ballot to the person in charge of the election, citing SDCL 12-19-9.[5]
In Brown v. Dakota Public Service Co., 68 S.D. 169,299 N.W. 569 (1941), a utilities company operating in Mobridge, South Dakota, applied to the city council of Mobridge for a franchise permitting the company to engage in the business of selling electric light, heat and power. A special election was called and held on November 7, 1939, to approve the franchise. At this election, the vote, as canvassed, was 712 votes in favor of and 657 votes against. The city council determined that the ordinance had been adopted. The issue in the case involved the construction of the statutes relating to absentee voting. The court determined the ultimate issue to be: "Should such statutes be held to be directory or mandatory?" 68 S.D. at 173, 299 N.W. at 571. InBrown:
 The record in this case establishes that the general practice followed was to deliver official ballots and other necessary documents to election workers, without any application of any kind having been filed with the city auditor. No record was made by the city auditor of any applications received by him; and no such record was available for public inspection. Election workers, armed with a liberal supply of ballots and other necessary documents, called upon voters and had them sign applications and, at the same time and as part of the same transaction, mark their ballots, sign the identification slips and other papers and they were then enclosed in the return envelope and sealed up, except the application and one identification slip were not placed in the envelope, but were attached thereto. The envelopes were handed to such workers who delivered the fruits of their labor to the city auditor, who in turn delivered the same to the election boards on election day. Little or no attention was paid to the provision limiting the privilege of voting in this manner to absentees or persons physically unable to attend the election; and little heed was given to the secrecy of the ballots.
68 S.D. at 174-75, 299 N.W. at 571-72.
The court in Brown held:
 That so far as the acts and duties of the elector are concerned, he must substantially comply with the requirements of the election statutes if he is to cast a valid ballot; on the other hand, he should not be disfranchised by the mere negligence or omissions of election officials; and that the election statutes so far as the acts and duties of such officials are concerned, should be held to be directory unless otherwise expressly declared by statute, or it is made to appear that such acts and conduct affected the merits of the election and prevented an honest and free expression of the will of the voters. (Emphasis added.)
68 S.D. at 177, 299 N.W. at 573. Further, the court concluded that the absentee voting statutes were mandatory as far as the duties of the voters were concerned, and that failure tosubstantially comply with the absentee voting statutes on the part of the voter rendered his vote void. Id.
To differentiate between "directory" and "mandatory" provisions of election laws one must look to the consequences of the nonobservance of an act done in violation of a mandatory provision or the nonobservance of an act done in violation of a directory provision. An act done in violation of a mandatory provision is void whereas an act done in violation of a directory provision, while improper, may nevertheless be valid and constitutes a mere irregularity not vitiating the election.Larson v. Locken, 262 N.W.2d 752, 754 (S.D. 1978) (citingSommerfeld v. Board of Canvassers, *Page 190 269 Wis. 299, 69 N.W.2d 235 (1955)).
In Larson, we considered an election contest under SDCL ch. 12-22. Larson involved an appeal from a final judgment ordering that the ballots cast in an election for a director of an irrigation district be disallowed and that a new election be held for the director's position between Locken and Keith Larson. In that case, the night before the election, while Locken was present in an adjoining room at least one voter cast an absentee ballot for the office of director of the district. Further, Locken on the day of the election, delivered three notarized absentee ballots to the polling place. This was coupled with the fact that several other absentee ballots were delivered to election officials by individuals other than the absentee voter or the officer required by law. Evidence also showed that blank absentee ballots were distributed without first receiving written applications therefor. It was also shown that various ballots and return envelopes were not properly notarized, though each envelope contained a properly signed and notarized affidavit. Also, several written applications did not identify their respective voting precinct, voters' places of permanent residence, or the reasons for being unable to attend the polling place on election day, all contrary to SDCL 12-19-2.
In Larson, this court noted that the purpose of absentee voting statutes is to allow voters who are unable to attend the polling place on election day the opportunity to vote, to prevent fraud, and to achieve a reasonably prompt determination of the result of the election. Further, we held that it was not the policy of the law to disfranchise voters because of an election official's mistakes, negligence, or misconduct.
Absentee ballot voting laws are considered mandatory.
 As a general rule, the statutory directions to the voter with respect to the time and manner of making applications for an absentee ballot, the manner of marking the same, the taking of the prescribed affidavit, and the return of the ballot, together with the affidavit, are regarded as mandatory and strict compliance therewith is required.
Id., 262 N.W.2d at 755 (citing 26 Am.Jur.2d, Elections § 245 (1966) (citing Brown, supra)).
The South Dakota Legislature has specifically spoken on this issue. It has provided through SDCL 12-19-34 that it is inappropriate for informalities to invalidate an election. SDCL12-19-34 provides:
 No mere informality in the matter of carrying out or executing the provisions of this chapter shall invalidate the election or authorize the rejection of the returns thereof, and the provisions of this chapter shall be liberally construed for the purposes herein expressed or intended.
Although absentee ballot voting laws are considered mandatory, the violations here do not mandate that this election be set aside. Here, the absentee voters substantially complied with the absentee voting requirements, albeit informally. The procedural irregularities concerning the absentee ballots included: (1) voters who voted in front of Bisek, the business manager; (2) the messenger voters; (3) those who made a telephone call for an absentee ballot; (4) written requests for absentee ballots; and (5) those who appeared in person for absentee ballots.
Here, there is no credible evidence that the voters' vote was not secret, nor that any unqualified voter cast an absentee ballot. Ms. Bisek had received a list of qualified voters from the Roberts County Auditor and all of the people who voted in this manner were properly registered to vote.
As to the "messenger voters," Bisek and another individual personally delivered the absentee ballots to each of the eight voters at their homes. These voters were "shutins" who were physically unable to vote at the polling places. The voting was secret, and Bisek did not observe how any of these people marked their ballots. In addition, Bisek personally delivered these ballots to the appropriate polling place on the day of election.
Obtaining a single ballot as the result of a telephone call to the election official in charge of the election does not rise to the level of invalidating the entire election. *Page 191 
As to the sixteen voters who sent written requests for absentee ballots, the primary objection to their voting is based on SDCL12-19-2. See supra note 1. Appellants' objections are based on the allegations that the absentee ballot requests were not signed by the applicant, failed to state a voting precint or place of voting residence, the reason for which the ballot was requested, were not stamped with the date they were received, and were not delivered to Bisek in the proper envelope. Here, Bisek knew the voting residences, not only because she knew the voters personally, but also because she was in possession of the auditor's list which gave the voters' voting residences and precincts. Bisek knew that the absentee voters were "snowbirds," students, or otherwise out of the city, and she knew they had a valid reason for requesting the absentee ballots. Further, the envelopes were returned to Bisek by certified or registered mail. After receipt of the envelopes by Bisek, she placed them in a safe at the New Effington School until election day and then personally delivered them to the appropriate precinct.
Finally, one voter went to Ms. Bisek in person requesting an absentee ballot. This occurred on the day of the election. The voter did not fill out a written application for the ballot. However, the voter's ballot was delivered to the proper precinct and was secret.
We therefore hold, under the facts of this case, that there was no substantial violation of the South Dakota absentee voting statutes which, viewed cumulatively, prevented a free and fair expression of the will of the voters. Larson v. Locken, 262 N.W.2d at 754.
 ISSUE II
WHETHER NONRESIDENTS OF A SCHOOL DISTRICT SHOULD BE ALLOWED TO VOTE IN THAT SCHOOL DISTRICT'S CONSOLIDATION ELECTION WHEN THERE IS NO SUBSTANTIAL DOUBT AS TO THE OUTCOME OF THE ELECTION.
Appellants allege that fifteen voters resided outside of the school district and at the time of the election voted in that district's election. It should be noted that fourteen of the fifteen voters challenged were on the current precinct registration list provided by the Roberts County Auditor to the election officials. Furthermore, eight of the challenged voters still reside in Roberts County. As stated earlier, the reorganization plan was approved by the New Effington voters by a twelve-vote margin.
Appellants argue that residency within a school district is a requisite to voting on any issues therein. Furthermore, they argue that a qualified voter must first be a resident of a particular precinct before he can register. Thus, they assert residency must continue to be a qualification for such a voter to exercise his or her franchise.
The statute requiring that voters must vote in the precinct in which they reside was repealed in 1973. See SDCL 12-3-4, repealed 1973. Furthermore, SDCL 12-18-7.1 provides, in part: "Any person whose name appears on the registration list in the possession of the election judges of the precinct shall be entitled to vote in that election." The legislature has determined certain criteria for determining voting residence. SDCL 12-1-4 provides:
 For the purposes of this title, `residence' shall be the place in which a person has fixed his habitation and to which, whenever he is absent, he has the intention of returning.
 A person who has left his home and gone into another state or territory or county of this state for a temporary purpose only shall not be considered to have lost his residence.
 A person shall be considered to have gained a residence in any county or city of this state in which he actually lives, providing such person has no present intention to remove himself therefrom.
 If a person moves to another state, or to any of the other territories, with the intention of making it his permanent home, he shall be considered to have lost his residence in this state. *Page 192 
We therefore hold that the mere change of residency from one precinct to another within the same county does not prohibit a voter from voting at his "voting residence." Thus, eight of the challenged voters were entitled to vote in the New Effington District. Therefore, since eight of the challenged votes are valid (in an election won by twelve votes), the trial court properly granted summary judgment.
 ISSUE III
WHETHER THE FAILURE TO PROVIDE PROCEDURAL SAFEGUARDS INVALIDATED THE ELECTION.
Appellants raise two issues which they assert affected the secrecy of the voting during the election. They assert that (1) the use of a cardboard ballot box, and (2) the failure to use a voting booth should invalidate the election.
The South Dakota Constitution provides:
 The Legislature shall by law define residence for voting purposes, insure secrecy in voting and provide for the registration of voters, absentee voting, and the administration of elections, the nomination of candidates and the voting rights of those serving in the armed forces. (Emphasis added.)
S.D. Const. art. VII, § 3.
SDCL 12-16-26 provides:
 Ballot boxes shall be so constructed to preclude the removal of any material therefrom except by means of an opening which may be secured in the closed position by means of a metal seal which will preclude opening of the box without the destruction of the seal; materials used in the construction of ballot boxes shall be such that they will prevent tampering with or mutilation of ballots within them. There shall be a second opening in each such ballot box, at the top when the box is upright, not larger than is sufficient to admit a single closed ballot to be inserted therein at one time. (Emphasis added.)
In this case, the ballot boxes used at the Claire City and New Effington voting precincts were constructed of heavy duty cardboard with tops securely sealed with masking tape. The ballot box construction did insure the secrecy of the ballots cast. We hold that the use of the cardboard boxes here, despite the informality, did not prevent a fair and free expression of the will of the voters. See Larson, supra.
As to whether the lack of the use of voting booths should invalidate the election, we find this argument without merit. Voting booths were available in Claire City, although admittedly, voters voted at a "voting table" as was the custom. Here, the poll watchers testified that although they could have seen, they did not in fact see how any voters voted.
Although there were no voting booths used in New Effington, there were no poll watchers present, and no election official saw how any voter voted. The failure to provide a voting booth was made by the election official and not the voter. "It is not the policy of the law to disfranchise voters, because of election officials' mistakes, negligence or misconduct[.]" Larson, 262 N.W.2d at 754 (citing Haggard v. Misko, 164 Neb. 778,83 N.W.2d 483 (1957)). Here, the voters did nothing wrong. They should not be disfranchised due to the election official's inadvertence.
The judgment of the trial court is affirmed.
WUEST and MORGAN, JJ., concur.
HENDERSON and SABERS, JJ., dissent.
[1] SDCL 12-19-2 provides:
 An absentee voter desiring to vote by mail may apply to the person in charge of the election for an absentee ballot. The application or request shall be made in writing and be signed by the applicant and state his voting precinct, place of voting residence and the reason for which the ballot is requested. The ballot shall be sent to the voter's residence, as shown on the voter registration list or any temporary residence address designated in writing by the voter, at the time of applying for the absentee ballot. The state board of elections shall promulgate rules pursuant to chapter 1-26 to prescribe a form which delineates the reasons for an absentee ballot request that allows the voter to indicate the proper reason for the request. The person in charge of the election shall stamp the application with the date it was received in his office. The application may be made by letter or upon blanks furnished by the person in charge of the election or upon any form prescribed by the state board of elections or the postcard form referred to in § 12-4-8.1, executed by persons authorized in accordance with the Federal Voting Assistance Act of 1955 (50 U.S.C. § 1452). The person in charge of the election shall preserve a record of the name, post-office address and voting precinct of each applicant and, except as provided by § 12-19-45, send each written application by registered mail or deliver the same to the superintendent of the election board of the home precinct of the applicant.
[2] SDCL 12-19-3 provides:
 Upon receiving an application for absentee ballots, the person in charge of the election shall, within forty-eight hours, or if ballots are not then on hand, then within forty-eight hours after receipt of the ballots, after confirming from the master registration list that the applicant is registered as a voter pursuant to chapter 12-4, enclose one of each of the official ballots, a set of instructions on absentee balloting, in an unsealed return envelope which shall be prescribed by the state board of elections. All of the enclosures shall be sealed in an envelope addressed to the applicant at the place stated in his application.
[3] SDCL 12-19-4 provides:
 The return envelope for the absent voter's ballot shall have printed on the reverse thereof an affidavit, to be signed by the voter at a place for certification by the officer before whom it is executed. The state board of elections shall prescribe the forms for the return envelope, ballots, instructions to the voter, and such certification to accommodate the federal service voter under the provisions of the Federal Voting Assistance Act of 1955 (50 U.S.C. § 1452).
[4] SDCL 12-19-7 provides:
 A voter voting an absentee ballot shall mark it and fold it without revealing the marks to any other person. The voter shall place the voted ballots in the return envelope provided and seal the envelope. The voter shall execute the affidavit on the return envelope in the presence of a person authorized to administer oaths or take acknowledgments pursuant to Title 18. In the case of a federal service voter, as defined in § 12-19-1, or an elderly or handicapped voter as defined in Public Law 98-435, a self-administered oath prescribed by the state board of elections is sufficient. The voter shall either mail the ballot, deliver it in person or have it delivered to the person in charge of the election.
[5] SDCL 12-19-9 provides:
 The absentee voter shall seal the official return envelope, with all the ballots enclosed, in the presence of the officer referred to in § 12-19-7. Upon completion of the affidavit required under § 12-19-4, either the absentee voter or, at his direction, the authorized messenger shall deliver the absentee ballot to the person in charge of the election. The person in charge of the election shall provide the authorized messenger referred to in § 12-19-2.1 with a receipt when he returns the absentee ballot. If there is not sufficient time for the person in charge of the election to transmit the ballot to the voter's home precint, the authorized messenger shall deliver it personally to the superintendent of the voter's home precint.