The New Effington election was decided by a margin of twelve votes. Three times that many votes were cast by absentee ballots neither requested nor processed in compliance with the election laws of South Dakota. Some fifteen votes were cast by persons who no longer reside in the New Effington School District. "Substantial doubt" has been cast "upon the validity of the outcome of the election." Larson v. Locken, 262 N.W.2d 752, 755 (S.D. 1978). The trial court's summary judgment upholding the election should be reversed. *Page 193 
 1. ABSENTEE BALLOTS
Although SDCL 12-19-34 provides that "[n]o mere informality in the matter of carrying out or executing the provisions of this chapter shall invalidate the election," there is an important difference between carrying out the provisions of the chapter informally and not carrying them out at all. SDCL 12-19-34 does not repeal Chapter 12-19.
Under the rule of Larson v. Locken, 262 N.W.2d at 754, an election will be invalidated, SDCL 12-19-34 notwithstanding, if there have been "substantial violations of the South Dakota absentee voting statutes which, viewed cumulatively, did not allow for a free and fair expression of the will of the voters." Failures to comply strictly with absentee ballot procedures are substantial violations:
 As a general rule, the statutory directions to the voter with respect to the time and manner of making application for an absentee ballot, the manner of marking the same, the taking of the prescribed affidavit, and the return of the ballot, together with the affidavit, are regarded as mandatory and strict compliance therewith is required. These provisions deal with the statutory requirements that a voter must follow in order to be eligible to cast an absentee ballot. The voter has absolute control over these activities and it is incumbent on him to make sure that this procedure is followed to insure a valid vote.
Id. at 755 (footnote omitted) (emphasis added).
In Larson, the same violations of mandatory absentee ballot procedures found here — e.g., distribution of absentee ballots without written requests, notarization irregularities and failure to identify applicants' voting precincts, permanent residences, and their reasons for being unable to vote election day — were held to invalidate an irrigation district election. The majority opinion cannot be reconciled with Larson.
Absentee voters exercise a privilege not enjoyed by election day voters. Brown v. Dakota Public Service Co., 68 S.D. 169, 177,299 N.W. 569, 573 (1941). This privilege, however, opens the door to the risk of fraud, and places on absentee voters the affirmative duty to comply strictly with mandatory procedures designed to discourage fraud. Larson, 262 N.W.2d at 754. It is not enough that the person in charge of the election is satisfied that absentee ballots are valid. It is not for that official to make that determination. SDCL 12-19-10 clearly directs that the election board "shall carefully compare the affidavit on the reverse side of the official return envelope with the written application received from the officer in charge of the election." It is the board's responsibility to satisfy itself "that the ballots received were voted by the voter whose name appears on the affidavit." SDCL 12-19-10.
Nor is it enough that the trial court found no actual fraud. "It is the opportunity, irrespective of whether any fraud was committed or intended, that is sufficient grounds upon which to invalidate the vote." Larson, at 756.
In summary, these multiple violations of the absentee voting statute cast such doubt upon this election that it cannot be considered a free and fair expression of the will of the voters.
 2. VOTING BY NON-RESIDENTS OF THE SCHOOL DISTRICT
The majority opinion holds that six of the fifteen New Effington voters not residing in that school district were not entitled to vote there because, though registered to vote there, they had moved out of Roberts County. An additional elector was disqualified because although a Roberts County resident, she was not registered to vote in the New Effington School District. The majority incorrectly holds that the remaining eight were entitled to vote in the new Effington election because they were still registered to vote there, because they had not moved out of Roberts County even though they had moved out of the New Effington voting precinct. Accordingly, the majority proceeds to invalidate only seven votes and since the election was decided by twelve, they conclude that the election result should stand. The majority *Page 194 
fails to offer reason or authority to justify this result.
Article VII § 2 of the South Dakota Constitution provides: "Each elector who qualified to vote within a precinct shall be entitled to vote in that precinct until he establishes anothervoting residence" (emphasis added). It does not say "until he establishes another voting residence outside the county." It does not say "until he registers to vote in another precinct." It says "until he establishes another voting residence."
SDCL 12-4-12 provides that voters must make a new registration if they "mov[e] to this state from another state, or mov[e] from this state to another state, or from one county to another in this state." SDCL 12-4-13 provides that a county auditor "may" alter a voter's registration card "to reflect a move of a voter from one precinct to another within the county." SDCL 12-18-7.1
provides that "[a]ny person whose name appears on the registration list in the possession of the precinct election judges shall be entitled to vote at that election."
Taken together and read casually, these statutory provisions seem consistent with the majority's analysis. Read carefully, however, none of these statutes permit voters who have established a new voting residence within a county to continue to vote in a precinct where they no longer reside. No South Dakota case has ever permitted this, prior to this majority opinion; in fact, to attempt to do so would expressly contravene the South Dakota Constitution and be unconstitutional. The sole legal support for the majority's position is a sixteen-year-old opinion of the attorney general, S.D. Att'y Gen. Op. 74-45 (1974). Obviously, we must construe statutes in light of the clear words of our Constitution rather than in light of an opinion which is not binding on this court.
It is basic democratic theory that citizens should vote in the place of their residence and nowhere else. This election is a perfect illustration of how two distinct places of residence, with two distinct interests to be voted, can exist within the same county. At stake is the consolidation of the smaller New Effington School District with the larger Sisseton system. Both communities are in Roberts County. Yet SDCL 13-6-47 requires not a simple county-wide majority but a separate majority in eachaffected school district to approve the consolidation.
The election results demonstrate how differently each Roberts County community identified what was in its best interest. In Sisseton, the vote for consolidation was nearly nine-to-one, with 672 votes cast. In contrast, in New Effington, consolidation squeaked by with a mere margin of twelve votes (with fifteen disputed), of 474 cast.
Under the majority's rule, any resident of Sisseton, voting from the perspective and in the interest of that community, may vote in the New Effington School District election, and even determine the outcome, so long as a prior New Effington precinct registration of that voter has not been affirmatively superseded. As plaintiff Darlene Parkhurst summed it up, the unfairness of the election was in "letting voters that did not live in our school district . . . vote and telling us where our kids would go." I dissent from this inequitable, undemocratic and unconstitutional result.*
HENDERSON, J., joins this dissent.
* I also disapprove of the Supreme Court procedure which permitted summary issuance of an order affirming the trial court with an opinion to follow, especially when the question is as close as it is here. *Page 195