**MONTGOMERY WARD, Plaintiff and Appellant,**

v.

**Martin SHOPE, Defendant and Respondent.**

**No. 12542.**

Supreme Court of South Dakota.

Submitted on Briefs Oct. 12, 1979.

Decided Dec. 27, 1979.

Robert L. Jones, Sioux Falls, for plaintiff and appellant.

Wally A. Eklund, of Johnson, Johnson & Eklund, Gregory, for defendant and respondent.

FOSHEIM, Justice.

This appeal is from a judgment on a jury verdict in favor of the defendant in the amount of $7,000 actual damages and $5,000 punitive damages. Plaintiff's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial was denied. We reverse.

Montgomery Ward received a credit application from a Martin Shope. Following approval of the application, charges were made to this account. Merchandise addressed to the defendant was mailed to a post office box registered in his name at Herrick, South Dakota. No items were returned to Montgomery Ward as nondeliverable or unclaimed. Although it appears some payments were made, Montgomery Ward soon experienced collection difficulties regarding this account.

The defendant, a resident of St. Charles, South Dakota, has operated an automobile repair shop in Naper, Nebraska since 1972. Prior to moving to St. Charles, he operated a similar business in Herrick, South Dakota. Martin Shope maintained no business or home telephone. He continued to receive mail at the Herrick post office until August of 1975. In attempting to locate the defendant, Montgomery Ward contacted two daughters and left messages at various places for him to return their calls. The calls were made during business hours and

no claim is made that the callers used offensive or abusive language. He was ultimately reached at a cafe in Naper, Nebraska. When the defendant denied responsibility for the merchandise charged to his account, Montgomery Ward requested his aid in determining who was purchasing under his name. He refused to assist.

Plaintiff commenced an action against the defendant on this account in small claims court, but later obtained an order dismissing the claim with prejudice. Defendant's counterclaim was tried on theories of invasion of privacy and malicious use of process.

The defendant testified that the first person he talked to by telephone at the cafe wanted to know why he was not keeping up the monthly payments with Montgomery Ward. He said he then denied owing the account or ever having applied for credit with Wards. The defendant claimed plaintiff's agents continued calling him several times during the dinner hour at the cafe, and that other customers could overhear what he said. The record reveals that numerous collection letters were mailed to the defendant, but were not opened or read by him. The telephone calls to the daughters of the defendant were apparently for the purpose of locating their father. The assignments of error first call upon us to determine if a prima facie showing adequate to support the verdict in the defendant's favor was established.

■ Improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to recover damages for an invasion of privacy. *Montgomery Ward v. Larragoite,* 81 N.M. 383, 467 P.2d 399 (1970). In recognizing this rule we are in accord with most jurisdictions. See 62 Am. Jur.2d Privacy § 39 (1972); Annot., 33 A.L.

R.3d 156 (1970). It comes within recognized invasion of privacy classifications.[1] Restatement (Second) of Torts § 652 (1977); W. Prosser, Law of Torts, Privacy § 117 (1971). A creditor has a right, however, to pursue his debtor and to persuade payment, to threaten legal action to collect the debt, and to resort to the courts to enforce his rights, even though the steps taken may result in some invasion of the debtor's privacy. *Household Finance Corp. v. Bridge,* 252 Md. 531, 250 A.2d 878, 56 A.L.R.3d 446 (1969); 62 Am.Jur.2d Privacy § 39 (1972). While all but a few states recognize this type of invasion of privacy, they are not in agreement as to when questionable collection methods constitute actionable conduct. Some oppressive or coercive conduct by the creditor, however, is essential and this must constitute a continuing harassment of the debtor. *Household Finance Corp. v. Bridge,* supra; Annot., 33 A.L.R.3d 157 § 2(a) (1970).

■ The gist of the cause of action in privacy cases is wrongful conduct of a personal character resulting in injury to the feelings, without regard to any effect which the publication may have on the injured party's pecuniary interest or his standing in the community. *Truxes v. Kenco Enterprises, Inc.,* 80 S.D. 104, 119 N.W.2d 914 (1963); *Fairfield v. American Photocopy Equipment Co.,* 138 Cal.App.2d 82, 291 P.2d 194 (1955). See: 62 Am.Jur.2d Privacy § 43 (1972); Annot., 14 A.L.R.2d 750 (1950). The invasion must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities. *Gill v. Hearst Publishing Co.,* 40 Cal.2d 224, 253 P.2d 441 (1953); *Reed v. Real Detective Publishing Co.,* 63 Ariz. 294, 162 P.2d 133 (1945).

In *Household Finance Corp. v. Bridge,* supra, the Court of Appeals of Maryland held that an invasion of privacy was not

---

1. The right or privacy is invaded by:
  (a) Unreasonable intrusion upon the seclusion of another; or
  (b) Appropriation of the other's name or likeness; or
  (c) Unreasonable publicity given to the other's private life; or
  (d) Publicity that unreasonably places the other in a false light before the public.
Restatement (Second) of Torts § 652A–E (1977).

established by evidence that the creditor had made a number of telephone calls over an eleven-month period reminding the plaintiff that she was obligated to pay the balance unpaid for the purchase of an automobile, even though the plaintiff's parents, rather than plaintiff, had signed the promissory note.

In this case, the telephone calls to the defendant at the cafe were necessary since he did not maintain a personal or business phone. Such calls do not show a design to harass the defendant in the presence of other people or of giving publicity to private facts when private contacts were available. The callers could not be expected to know whether the defendant was speaking within the hearing of other people who, according to the defendant, heard only his part of the conversation. He, in fact, controlled what was overheard. The evidence indicates that the individual who made the telephone calls which the defendant testified were the only ones he found offensive was not employed by plaintiff, but by another mail order company that was also trying to collect money from Martin Shope.

When plaintiff was informed that some unauthorized person apparently had obtained credit and received merchandise in the name of Martin Shope, good business called for a diligent effort to identify and pursue the defrauder. The defendant's testimony indicates that this task could have been simplified by a prompt disclosure on his part of all he knew about the problem and that greater cooperation on his part could have diminished the persistent actions necessary by the creditor to identify the true debtor. It appears from the defendant's testimony that until August of 1975, his employee picked up his mail at his post office box. This was confirmed by the postal clerk who also testified that such employee's daughter signed the application for the post office box on behalf of Martin Shope and sometimes also picked up his mail. The evidence is vague with regard to whether this employee actually paid the box rent with the defendant's knowledge or funds.

The last box rent was paid January 8, 1976, and the box was not closed until July 1, 1976. It would seem defendant owed a greater degree of accommodation since his acts or omissions, in some measure, put in motion the circumstances which provided opportunity for the apparent fraud.

As was stated in *Household Finance Corp. v. Bridge,* supra,

[t]he problem of defining the scope or range within which the creditor might properly act in order to collect his debt, is the problem of balancing the interest of the creditor in collecting his debts against that of a debtor of ordinary sensibilities. Unless some latitude is given the creditor to invade, to a reasonable extent, the debtor's right of privacy, without incurring liability, we may well end up with the result that the creditor will find it preferable to proceed immediately with legal action when a debt becomes in default, without any warning to the debtor, rather than run the risk of being answerable to a supersensitive debtor in an action for invasion of privacy.

252 Md. at 543, 250 A.2d at 885–86; 56 A.L.R.3d at 455. See also, *Davis v. General Finance and Thrift Corp.,* 80 Ga.App. 708, 57 S.E.2d 225 (1950). The Maryland court reviewed the cases where recovery has been allowed and noted that there usually exists "a pattern of harassment on the part of the creditor or the communication, if not of such frequency as to constitute harassment, has been of such a nature as to possess a vicious quality." 252 Md. at 541, 250 A.2d at 884; 56 A.L.R.3d at 454. Applying the evidence in the light most favorable to the verdict, we are of the opinion that in view of the defendant's loose arrangement regarding his post office box when he moved from Herrick, South Dakota, in allowing others to pick up his mail at that address and in failing to terminate the box when no longer needed, the collection methods of plaintiff were commensurate with the circumstances which defendant allowed to exist and did not constitute an actionable invasion of privacy. This includes bringing an action against the defendant to recover

the amount due on the account, since the extent the defendant's involvement was then unclear and subject to valid question. Plaintiff dismissed that action when it became apparent that the defendant had not ordered or authorized the purchase of merchandise in his name. After commencing an action on the account, however, and even after the counterclaim had been served, it appears plaintiff continued to send letters to the defendant demanding payment. Once plaintiff resorted to the courts with knowledge the claim was disputed, continued unilateral collection efforts could constitute actionable harassment and a wrongful invasion of the defendant's right to be left alone. The defendant testified, however, that he neither opened nor read any of the collection letters from plaintiff. Accordingly, he could not have been embarrassed, nor could his feelings have been offended as a result of the mailings.

██ As we indicated in *Truxes v. Kenco Enterprises, Inc.,* supra, whether there is an offensive invasion of privacy involves a question of law. If the court first decides there is substantial evidence tending to show a serious, unreasonable, unwarranted and offensive interference with another's private affairs, then the case is one to be submitted to the jury. We conclude that reasonable minds could not find from the evidence that an action for invasion of privacy or malicious use of process was established. There was no material issue of fact for the jury. Plaintiff's motion for a judgment notwithstanding the verdict should have been granted.

In view of the conclusions reached, it is unnecessary to review the other assignments of error.

Reversed.

WOLLMAN, C. J., MORGAN and HENDERSON, JJ., and WUEST, Circuit Judge, concur.

WUEST, Circuit Judge, sitting for DUNN, J., disqualified.