**Howard BALDWIN, Defendant
and Appellant,**

v.

**FIRST NATIONAL BANK OF the
BLACK HILLS, Plaintiff
and Appellee.**

Nos. 14338, 14383.

Supreme Court of South Dakota.

Argued Oct. 22, 1984.

Decided Jan. 30, 1985.

Rehearing Denied March 12, 1985.

Ralph C. Hoggatt, Deadwood, for defendant and appellant.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiff and appellee; Joseph M. Butler, James P. Hurley, and Jacqueline M. Rasmussen of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, on the brief.

FOSHEIM, Chief Justice.

Howard Baldwin (Baldwin) appeals from an order granting First National Bank of the Black Hills, now Norwest (Bank), pre-trial possession of certain equipment and from a directed verdict granted Bank. Bank filed a Notice of Appeal. We affirm in part, reverse in part, and remand.

Baldwin was an independent contractor who erected power lines for rural utility companies. He started negotiating loans with Bank in 1975. On December 31, 1980, his loans were restructured, and on December 3, 1981, two of his loans were combined. There are four relevant security agreements:

March 15, 1975 covering all machinery and equipment used in Baldwin Construction.

March 15, 1975 covering inventory, accounts, contract rights and chattel paper.

December 31, 1980 covering equipment, farm products, consumer goods and certain titled goods.

December 3, 1981 covering the security agreements dated 12–31–80 and 3–15–75, although it is *not* designated to which 3–15–75 security agreement this document referred. Accounts receivable are not checked as collateral in this agreement.

Pursuant to the December 3, 1981 agreement, Baldwin was to make semi-annual payments of $9,300. The first payment was due July 1, 1982.

In January of 1982, Baldwin developed concrete motor mount pads for use in the oil industry. He built two of these pads to be tried by a Wyoming oil company. In April, 1982, the company ordered four pads. Baldwin then approached a Gillette, Wyoming bank for financing of the project using the purchase orders as collateral. Appellee Bank refused this financing. Baldwin gave the Wyoming bank permission to check his credit. Bank released information by telephone to the Wyoming bank regarding an Internal Revenue Service (IRS) levy on Baldwin's account. Upon learning this, the Wyoming bank informed Baldwin that they did not want trouble with the IRS and refused to finance his project.

Baldwin informed Bank that his July 1, 1982 payment would be late because of the Wyoming bank's refusal. Baldwin claims he was granted an extension until mid-October, when he expected his check for the first two units from the oil company. Bank disputes any firm extension agreement, but claims if an extension was agreed upon, it was only until October 1. On October 18, 1982, Baldwin received the check. He offered to pay Bank the late payment on October 25, 1982. Bank refused. Bank advised Baldwin it required at least $15,000.00 and a second mortgage on his home as further security. Baldwin refused the second mortgage. He again offered the late payment on December 1, 1982, which Bank refused.

Baldwin was served with a Summons, Complaint, Affidavit in Claim and Delivery and an Order to Show Cause on October 18, 1982. No formal or written demand on the note was made. The complaint prayed for a judgment awarding Bank possession of the collateral or an order directing that the collateral be sold and the proceeds applied to the note. No request was made for judgment on the total amount due on the note, nor was any mention made of an assignment of accounts receivable or earnings. The Court issued an order directing the sheriff to seize Baldwin's property for Bank.

Before trial, Bank learned that Baldwin had unpaid earnings due from a local rural power cooperative. Without any court action, Bank mailed certified letters to the six cooperatives. The letters stated that Baldwin had a delinquent debt with Bank, and that Bank had a security interest in his accounts receivable. Bank further requested these cooperatives to make all payments jointly to Baldwin and Bank. One cooperative, Butte Electric, complied with Bank's request. Baldwin requested that the court release his check. The court refused on the grounds that contested issues of fact

existed for the jury. Ruling on the release of the check was accordingly deferred.

The trial court did, however, grant Bank's Motion for Directed Verdict on Baldwin's invasion of privacy and due process claims. Baldwin's request for punitive damages was also denied. The jury was allowed to determine only Baldwin's tortious interference with a contractual relationship claim and Bank's entitlement to Baldwin's equipment in its Claim and Delivery action. The jury found Bank was not entitled to the collateral, but that there had been no tortious interference with contract.

■ We dispose first of the issues arising from Bank's release of information to the Gillette, Wyoming bank. Baldwin alleged this was in violation of the Privacy Act, 5 U.S.C. § 552a, *et seq.* That statute applies to "agencies" defined in § 552(e).[1] Under 5 U.S.C. § 552(e), Bank is clearly not an "agency." Nor is Bank a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).[2]

■ Baldwin also claims the release of information constituted a tortious invasion of his privacy. A similar claim was addressed in *Montgomery Ward v. Shope*, 286 N.W.2d 806 (S.D.1979). Only an unreasonable, unwarranted, serious and offensive intrusion upon the seclusion of another is regarded as tortious. *Id.* Baldwin expressly gave the Wyoming bank permission to check his credit. The most likely place for that credit inquiry is the institution that had previously extended him credit. Bald-

win's position seems to be that even though he agreed to have his credit checked, those who could provide that information had no right to give it. Granting a directed verdict on this issue was not erroneous. *Id.* at 810.

Baldwin next disputes the directed verdict granted Bank on his claims that Bank's mailing the May, 1983 letter to his potential employers invaded his privacy, and constituted reckless, negligent, willful and malicious conduct. Bank claims its actions were fully protected both by the security agreements and SDCL 57A-9-502(1).[3]

■ The trial court is not free to weigh the evidence or gauge the credibility of the witnesses on a motion for directed verdict. These are matters for the jury. It must accept that evidence which is most favorable to the party against whom the motion is sought, and indulge all legitimate inferences in its favor that can fairly be drawn therefrom. *Cox v. Brookings Intern. Life Ins. Co.*, 331 N.W.2d 299 (S.D. 1983). If, when so viewed, there is any substantial evidence to sustain the cause of action or defense it must be submitted to the jury. This must also be our view of the evidence when the trial court determination is challenged on appeal. *Id.; see also, Budahl v. Gordon & David Associates*, 323 N.W.2d 853 (S.D.1982); *Johnson v. John Deere Co.*, 306 N.W.2d 231, 235 (S.D.1981); *Ehlers v. Chrysler Motor Corp.*, 88 S.D. 612, 617, 226 N.W.2d 157, 159 (1975); *Thorstenson v. Mobridge Iron Works Co.*, 87 S.D. 358, 208 N.W.2d 715 (1973); *Myers v.*

1. 5 U.S.C. § 552(e) provides:

"For purposes of this section, the term 'agency' ... includes any executive department, military department, Government corporation, Government controlled corporation or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."

2. 15 U.S.C. § 1692a(6) provides:

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another ... The term does not include—
(A) any officer or employee of a creditor, while in the name of the creditor, collecting debts for such creditor."

3. SDCL 57A-9-502(1) provides:

(1) When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under § 57A-9-306.

*Quenzer,* 79 S.D. 248, 254, 110 N.W.2d 840, 843 (1961).

■ In order for Bank's May 1983 letter to have been properly sent under SDCL 57A–9–502(1), Bank must have proven that there was either an agreement allowing Bank to take such action or Baldwin defaulted on his note; and that Bank notified only "account debtors"[4] or "obligors on instruments."[5] Bank was unable to make this showing. The clause in the security agreement allowing for notification to account debtors refers to accounts used as collateral. It was disputed whether Bank had a security interest in Baldwin's accounts receivable. As stated, it is not clear from the December 3, 1981 security agreement whether it refers to the March 15, 1975 agreement covering machinery and equipment, or the agreement covering accounts. Accounts receivable are not identified as collateral on the December 3, 1981 document. The Bank's complaint in Claim and Delivery did not refer to any interest in accounts. In fact, the first mention made of accounts was the May 1983 letter. Neither did Bank prove default, which is a pre-condition. *See* SDCL 57A–9–501, 9–502. The jury found Bank was not entitled to the equipment, which implicitly means they found with Baldwin on his claimed extension and that he therefore was not in default.

Not all of the rural cooperatives to whom the challenged letter was mailed were "account debtors," SDCL 57A–9–105(1)(a), or "obligors on instruments," SDCL 57A–9–105(1)(i). They were potential employers. The only cooperative which owed Baldwin money for services was Butte Electric. This, however, does not justify Bank's letter to Butte Electric because, as noted, whether Bank possessed a security interest in accounts was disputed and Bank failed to show default. *Compare also, Surety Savings & Loan Co. v. Kanzig,* 53 Ohio

St.2d 108, 113, 7 Op3d 187, 372 N.E.2d 602, 23 U.C.C.Rep.Serv. 804, 808 (Callaghan) (1978), (A creditor must read 9–502(1), (SDCL 57A–9–502(1)), with 9–318, (SDCL 57A–9–318), and must state which account has been assigned, and make a specific direction to pay the secured party and a reasonable identification of the rights assigned).

■ Baldwin further alleged that in mailing the letter, Bank acted negligently or in bad faith. *See Pedi Bares v. First Nat. Bank of Neodesha,* 223 Kan. 477, 480, 575 P.2d 507, 511 (1978). Normally, questions of negligent or malicious conduct are questions for the jury. *See, Myers v. Lennox Co-op. Ass'n.,* 307 N.W.2d 863 (S.D. 1981); *Stenholtz v. Modica,* 264 N.W.2d 514 (S.D.1978). Baldwin additionally claimed that the May 1983 letter invaded his privacy. *Montgomery Ward, supra.* In *Montgomery Ward,* we said that a creditor does have the right "to pursue his debtor and to persuade payment, to threaten legal action to collect the debt, and to resort to the courts to enforce his rights, even though the steps taken may result in some invasion of the debtor's privacy." *Id.* at 808. It is the trial court's function to first determine as a question of law whether the intrusion warrants submission of the case to the jury. *Id.* at 810.

■ Even though a secured party's rights under Article 9 are cumulative, 57A–9–501(1), the secured party is not permitted to "harass a debtor by simultaneously pursuing two or more avenues of attack open to him. Neither case law or the language of 9–501 authorizes a 'double barreled' attack upon the debtor." White and Summer, *Uniform Commercial Code,* Section 26–4, pg. 765 (West, 1972); *see also Pedi-Bares, supra,* Hubbard v. Lagow, 576 S.W.2d 163, 165 (Tex.App.1979); *Farmers*

---

**4.** SDCL 57A–9–105(1)(a) defines "account debtor" as "the person who is obligated on an account, chattel paper or general intangible."

**5.** SDCL 57A–9–105(1)(i) defines "instrument" as " . . . any right to the payment of money [that] is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment."

*State Bank in Afton v. Ballew,* 626 P.2d 337, 340 (Okl.App.1981).

In this case, Bank did use "shotgun" tactics. It went beyond threatening legal action or resorting to the courts to collect its debt. Bank was already in litigation on the possession of Baldwin's equipment. It then went outside the court and pursued 9–502(1) rights, which Bank was not entitled to pursue. *See,* SDCL 57A–9–502(1), 9–318, 9–105(1)(a)(i). Under these circumstances, the trial court erroneously granted a directed verdict for Bank. *See, First National Bank of Jacksonville v. Bragdon,* 84 S.D. 89, 167 N.W.2d 381 (1961).

The trial court refused testimony on Baldwin's alleged damages for pain, suffering, humiliation and mental distress in relation to his claims arising from the May, 1983 letter, and punitive damages for this alleged wrongful conduct. While it is true Baldwin in one paragraph of his counterclaim requested these damages for what he characterized as "negligent" conduct, he also requested damages for oppressive, willful and intentional conduct. Admittedly the answer and counterclaim are not stellar examples of precise pleading draftsmanship; however, the allegations were sufficient to support his claims of bad faith in collecting a debt, invasion of privacy and recovery for mental anguish. *See, First National Bank of Jacksonville, supra.* Whether Baldwin can prevail with these claims is not an issue. *See, Chisum v. Behrens,* 283 N.W.2d 235 (S.D.1979); *Montgomery Ward, supra; First National Bank of Jacksonville supra.* Baldwin should have been allowed to introduce his evidence. *First National Bank of Jacksonville, supra.*

Baldwin next disputes awarding Bank a judgment on the note even though such relief was never requested in the pleadings. "Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." SDCL 15–6–54(c). "However, the relief to be granted under SDCL 15–6–54(c) is not unlimited, and such relief *must*

be based upon the facts alleged in the pleadings and justified by the proof at trial." *Miller v. Scholten,* 273 N.W.2d 757, 759 (S.D.1979), *quoting from American Property Services v. Barringer,* 256 N.W.2d 887, 892 (S.D.1977).

In this case, Bank's cause of action sought only recovery of the property. When Baldwin offered payment, the Bank refused, but never called the entire note due. Rather, Bank requested a larger payment, $15,000 instead of $9,300, and a second mortgage on Baldwin's home. Moreover, the jury found Bank was not entitled to the equipment, and thus, no default. Absent default, any judgment on the note was premature, and was improvidently entered. *Compare, Pedi-Bares, supra.*

Baldwin also raises several constitutional issues. We will pass on constitutionality only when necessary to determine the merits of a cause under review. First, we will ascertain whether a construction of the statute is fairly possible by which the constitutional issue may be avoided. *See Aberdeen Ed. Assoc. v. Aberdeen Bd. of Ed.,* 88 S.D. 127, 215 N.W.2d 837 (1974); *In re Snyder's Estate,* 74 S.D. 14, 48 N.W.2d 238 (1951); *Haas v. Ind. Sch. Dist.,* 69 S.D. 303, 9 N.W.2d 707 (1943). SDCL 21–15–3 requires a court to order a defendant in a Claim and Delivery action to appear and show cause why property should not be turned over to a plaintiff. The statute contemplates a hearing prior to possession being given to the opposing party. Baldwin was not allowed to present his defense. In other words, he was not allowed to "show cause." Because the trial court's action violated the statute, we do not reach the constitutional claims. The other issues raised by the parties are without merit.

We affirm the jury verdict finding that Baldwin did not show an intentional interference with a contractual relationship and that Bank was not entitled to the collateral. We also affirm the trial court's disposition of Baldwin's claims arising from Bank's release of information to the Wyoming

bank, but reverse and remand for new trial on the remaining issues addressed herein.

All the Justices concur.

WUEST, Circuit Judge, Acting as a Supreme Court Justice, participating.