**Raymond M. DARROW, Plaintiff and Appellant,**

v.

**Donnie SCHUMACHER, Individually and in his official capacity; City of Deadwood, South Dakota, Defendants and Appellees.**

**No. 17689.**

Supreme Court of South Dakota.

Considered on Briefs May 27, 1992.

Decided Feb. 3, 1993.

Rehearing Denied March 9, 1993.

---

Scott D. McGregor of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for plaintiff and appellant.

Steven M. Christensen, Deadwood, for defendants and appellees.

WUEST, Justice.

This is an appeal by Raymond Darrow (Darrow) from a judgment entered in favor of Officer Donnie Schumacher (Schumacher) and the City of Deadwood (City). We affirm.

In August 1989, Darrow, who was then residing in Denver, Colorado, returned to the City of Deadwood, South Dakota to attend his twenty-year class reunion. The annual Days of '76 Celebration was also in progress. On the afternoon of August 5, 1989, Darrow drove into Deadwood to find some former classmates. Officer Schumacher and Officer Russ Eisenbraun were directing traffic at the intersection of Deadwood Street and U.S. Highway 14–A. Eisenbraun was several yards away from Schumacher. Approximately 125 feet away from Schumacher, two volunteer firemen were standing near the firehall entrance.

The day before the incident involved in this case, the Chief of Police had directed officers to allow traffic to proceed directly across Highway 14–A in a westerly direction. Highway 14–A travels through the center of Deadwood to Main Street. On the day of the incident, the Chief directed officers to channel traffic either left or right at the intersection, but not to allow traffic to proceed straight across the intersection.

On August 5, traffic was very heavy after the Days of '76 parade and prior to the start of the rodeo. At approximately 12:30 P.M., Darrow approached the intersection where Schumacher was working. The day before, at the same intersection, another officer had permitted Darrow to travel west straight across Highway 14–A to Main Street. On the 5th, however, Schumacher, pursuant to the Chief's directive, directed Darrow to turn left. Darrow indicated he wanted to go forward instead. Schumacher, via hand signals, directed Darrow to go left. Darrow turned left, went one block south, turned right and went one block west and eventually parked in a hotel parking lot approximately one block from Schumacher's position. Darrow then walked back to the intersection where Officer Schumacher was directing traffic.

The parties' versions of the subsequent events differ. Darrow testified he joined a group of ten to twelve people waiting to cross Highway 14–A. After Schumacher directed this group of pedestrians to cross the street, Darrow approached Schumacher. Darrow stopped a couple feet short of

Schumacher and, "with his hands clasped behind him[,] Darrow leaned over and attempted to read Schumacher's name tag." According to Darrow, he asked, in a calm, conversational tone, "what's your name?" In response to his inquiry, Schumacher told Darrow to "get the [expletive] out of here." Darrow testified he began to walk away, and as he did, told Schumacher, "you've got a problem." Whereupon Darrow asserts Schumacher came after him, grabbed him by the arm and ushered him to the sidewalk. Schumacher then allegedly shoved Darrow, telling him to put his nose and chest against the wall and not to move or turn around. Darrow states the officer again used profanity toward him.

Schumacher then told Darrow to put his hands behind his back so he could be handcuffed. In response, Darrow says he told Schumacher there was no need to handcuff him, that he was not attempting to resist in any way or to escape. When Darrow stiffened his arms, Schumacher called Eisenbraun over to assist him in handcuffing Darrow. Darrow testified he eventually relaxed his arms and allowed Schumacher to handcuff him. After Darrow was handcuffed, Eisenbraun resumed directing traffic. Darrow alleges Schumacher then pounded on the cuff on Darrow's left wrist to tighten it. Darrow states he advised Schumacher the cuff was too tight and extremely painful. He asked Schumacher to loosen it. According to Darrow, Schumacher's reaction was to rotate the cuff around his left wrist four to six times and then cuff his right wrist. At that point, Darrow asserts Schumacher grabbed the chain linking the two cuffs and twisted it, jerking Darrow's arms up behind his back.

Officer Schumacher has a considerably different version of what occurred. Officer Eisenbraun testified Darrow, not Schumacher, initiated the confrontation. Schumacher testified Darrow's demeanor was far from conversational and he was, in fact, yelling at him. Schumacher admitted he may have sworn at Darrow. However, he asserts Darrow used a very loud, confrontational tone of voice and refused to abide by his instructions. The two volunteer firemen testified they could hear Darrow yelling over the din of traffic despite their being over 125 feet away. Moreover, Eisenbraun testified that, had Schumacher cuffed Darrow as tightly as Darrow claims, it would have been impossible to rotate the handcuff around Darrow's wrist. Eisenbraun testified he saw no injury to Darrow's wrist, nor did Darrow complain of any injury.

Darrow was ultimately arrested for obstructing a law enforcement officer. He was transported to the Lawrence County Jail. The jailor on duty testified Darrow was being "mouthy and loud." He did not see any blood or cuts on Darrow, nor did Darrow complain to him about any kind of injury. Darrow was held at the jail for about two hours.

Approximately five days later, Darrow sought medical treatment for his left wrist. He complained that his hand had become numb. Dr. John Herbst, Darrow's treating physician, advised Darrow he had suffered some damage to a nerve structure within his wrist. He classified the injury as a "nerve compression" in Darrow's left hand. Dr. Herbst testified "this was a really minor situation" and that "most people have injuries like this almost on a daily basis."

After his return to Denver, Darrow sought further medical attention. Dr. Thomas Fry, a hand specialist, testified by deposition that Darrow had suffered injuries to the superficial radial nerve directly related and attributable to the handcuffing process.

A grand jury indicted Darrow for obstructing a police officer. Just prior to the trial, the Deputy State's Attorney reduced the charge to a class two misdemeanor—disorderly conduct. Darrow was acquitted.

Darrow then sought damages from Schumacher and City for injuries allegedly suffered when he was arrested by Schumacher. Darrow brought causes of action based on excessive use of force, emotional distress, false arrest and imprisonment, and violation of Darrow's constitutional rights under 42 U.S.C. § 1983. Darrow also sought punitive damages from Schumacher for willful, wanton and malicious conduct.

Schumacher and City denied Darrow's allegations and asserted affirmative defenses of contributory negligence and various immunities which are not before this court.

The trial court refused to admit evidence regarding Darrow's acquittal on criminal charges. In addition, the trial court precluded City from introducing evidence regarding probable cause for Darrow's arrest. The civil jury was, in essence, allowed to determine for itself whether Schumacher had probable cause to arrest Darrow. Finally, the court precluded Darrow from offering any evidence or in any manner referring to Schumacher's prior employment with Wharf Mining Company (Wharf).

At the conclusion of all the evidence, the trial court directed a verdict in favor of City on Darrow's § 1983 action against it. With Darrow's consent, City had been dismissed as a party Defendant with respect to the other counts in Darrow's complaint.

All four counts against Officer Schumacher—excessive use of force, intentional infliction of emotional distress, false arrest and imprisonment and the § 1983 claim—were submitted to the jury, together with a claim for punitive damages. The jury received instructions on each count alleged by Darrow. Separate ballots were provided to the jury for each count charged. The jury found in favor of Schumacher on all counts.

Darrow appeals alleging four grounds of error:

(1) Whether the trial court incorrectly granted City's motion for directed verdict on Darrow's § 1983 claim.

(2) Whether the trial court erred in instructing the jury on the intent element of the § 1983 claim.

(3) Whether the trial court erred in disallowing evidence concerning Schumacher's prior employment with Wharf.

(4) Whether the trial court erred in disallowing evidence of Darrow's acquittal on the ultimate criminal charge of disorderly conduct.

We will discuss further facts as they become pertinent to each issue addressed.

## I. DIRECTED VERDICT ON THE § 1983 CLAIM.

In directing a verdict in favor of City on Darrow's § 1983 claim, the trial court stated: "There does not appear to be any evidence to show that the city engaged in any policy that resulted in the deprivation of civil rights to [Darrow]." Darrow argues substantial evidence was produced at trial that City had engaged in a pattern and practice amounting to an official policy as to the manner in which law enforcement would be conducted during the annual Days of '76 Celebration.

Darrow asserts there was a pattern and practice by City which amounted to an intentional policy of omission, inaction and inattentiveness to law enforcement needs during the celebration. Darrow points to testimony by Schumacher that he never received any particularized training with respect to the performance of his duties during the City's annual celebration. The Police Chief at the time of the incident also testified City had never done anything above the ordinary to handle the Days of '76 Celebration. Darrow asserts, because of this pattern and practice, law enforcement officers were regularly overworked during the celebration. Darrow points out Schumacher had been working for sixteen straight hours the day of the incident, and the day before he had worked a shift of ten straight hours with only eight hours off in between. Schumacher's three shifts immediately preceding the arrest were ten, fifteen and sixteen hours long. Darrow argues this practice led to the deprivation of his constitutional rights.

A motion for a directed verdict under SDCL 15-6-50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. *Carlson v. First Nat. Bank,* 429 N.W.2d 463, 466 (S.D.1988); *Sabag v. Continental South Dakota,* 374 N.W.2d 349, 355 (S.D.1985). Upon such a motion, the trial court must determine whether there is substantial evidence to continue the action. *Carlson,* 429 N.W.2d at 466; *Sabag,* 374

N.W.2d at 355. At this point in the trial, the court, in making this determination, is not free to weigh the evidence or gage the credibility of the witnesses. *Baldwin v. First Nat. Bank of Black Hills,* 362 N.W.2d 85, 88 (S.D.1985). The trial court, as well as this court on appeal, must view the evidence in a light that is most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that fairly can be drawn from the evidence. *Carlson,* 429 N.W.2d at 466; *Kreager v. Blomstrom Oil Co.,* 379 N.W.2d 307, 310 (S.D.1985). *Koupal & Anton, Inc. v. Wieczorek,* 375 N.W.2d 639, 640 (S.D.1985); *Sabag,* 374 N.W.2d at 355. If, when so viewed, there is any substantial evidence to sustain the cause of action or defense, it must be submitted to the finder of fact. *Baldwin,* 362 N.W.2d at 88. *See also Carlson,* 429 N.W.2d at 466; *Sabag,* 374 N.W.2d at 355.

*Denke v. Mamola,* 437 N.W.2d 205, 207 (S.D.1989). In other words, "[i]f sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate." *Sabag,* 374 N.W.2d at 355. (citing *Cox v. Brookings Int'l Life Ins. Co.,* 331 N.W.2d 299, 300 (S.D.1983)).

In *Monell v. New York City Dep't of Soc. Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635 (1978), the United States Supreme Court held local governing bodies may be sued directly under § 1983 in situations where the action alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated" by those whose acts may be fairly said to represent official policy. In addition, "local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'customs' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36, 56 L.Ed.2d at 635–36. On the other hand, the language and legislative history of § 1983 compelled the Court to conclude that Congress did not intend a municipality would be held liable solely because it employed a tort-feasor.

In other words, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.,* 436 U.S. at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 635. The Supreme Court went on to state the language of § 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Id.,* 436 U.S. at 692, 98 S.Ct. at 2037, 56 L.Ed.2d at 636. Thus, this court has held, "[i]t is well-settled that custom for the purpose of a section 1983 action must have force of law by virtue of 'persistent practices' of state officials." *Eischen v. Minnehaha Cnty.,* 363 N.W.2d 199, 203 (S.D.1985) (citing *Monell* and other cases).

Part of Darrow's complaint is with City's failure to adopt a special training policy with regard to the Days of '76 Celebration. The United States Supreme Court has discussed the issue of when a municipality can be held liable under § 1983 for failure to train municipal employees. In *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the United States Supreme Court held a municipality may, in certain circumstances, be held liable under § 1983 for constitutional violations resulting from its failure to train municipal employees. *Harris,* 489 U.S. at 387, 109 S.Ct. at 1204, 103 L.Ed.2d at 425. However, the circumstances under which an allegation of failure to train can be the basis of liability under § 1983 are limited. The "inadequacy of police training may serve as the basis for § 1983 liability *only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.*" *Id.,* 489 U.S. at 388, 109 S.Ct. at 1204, 103 L.Ed.2d at 426. (Emphasis added). The *Harris* Court continued:

This rule is most consistent with our admonition in *Monell,* 436 U.S., at 694 [98 S.Ct. at 2037], and *Polk County v. Dodson,* 454 U.S. 312, 326 [102 S.Ct. 445, 454, 70 L.Ed.2d 509] (1981), that a municipality can be liable under § 1983 *only where its policies are the "moving force [behind] the constitutional violation."* Only where a municipality's failure to

train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*Id.,* 489 U.S. at 388–89, 109 S.Ct. at 1204–1205, 103 L.Ed.2d at 426. (Emphasis added). "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *Id.* 489 U.S. at 391, 109 S.Ct. at 1206, 103 L.Ed.2d at 428. It would "result in *de facto respondent superior* liability on municipalities"—a result the Supreme Court rejected in *Monell,* 436 U.S. at 693–94, 98 S.Ct. at 2037, 56 L.Ed.2d at 637–38. "It would also engage the ... courts in an endless exercise of second-guessing municipal employee-training programs." *Harris,* 489 U.S. at 392, 109 S.Ct. at 1206, 103 L.Ed.2d at 429.

The Supreme Court, in *Harris,* stated, "[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question of whether there is a *direct causal link between a municipal policy or custom and the alleged constitutional deprivation.*" *Harris,* 489 U.S. at 385, 109 S.Ct. at 1203, 103 L.Ed.2d at 424. (Emphasis added.) *Accord Collins v. City of Harker Heights, Tex.,* — U.S. —, —, 112 S.Ct. 1061, 1067, 117 L.Ed.2d 261, 271 (1992). In *Harris,* the Court held "that a municipality can be found liable under § 1983 only where the municipality *itself causes the constitutional violation at issue.*" *Id.* (Emphasis added.) Thus, assuming for the sake of argument that City failed to train its officers specifically for special events such as the Days of '76 Celebration, Darrow must show that such failure to train was a direct cause of the constitutional violation which he alleges. Since directing traffic, dealing with citizens in confronta-

tional situations and effecting arrests are all part of a police officer's normal day-to-day activities, we fail to see any direct causal link between City's failure to specifically train its officers to deal with special events, such as the Days of '76 Celebration, and the alleged constitutional violation asserted by Darrow—excessive use of force.

■ Moreover, even if inattentiveness on the part of City led to its officers being overworked, "[g]enerally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom." *Wedemeier v. City of Ballwin, Mo.,* 931 F.2d 24, 26 (8th Cir. 1991) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, 803–05 (1985) (plurality)); *Patzner v. Burkett,* 779 F.2d 1363, 1367 (8th Cir.1985)).[1] In *Patzner,* the Eighth Circuit held a county could not be held liable where a plaintiff failed to establish the county had notice of prior misbehavior of police officers and failed to take remedial steps. *Patzner,* 779 F.2d at 1367. Thus, to establish his theory, Darrow must establish City "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Thelma D. by Delores A. v. Board of Educ.,* 934 F.2d 929, 934 (8th Cir.1991). Darrow points to no other incident which has occurred in the City of Deadwood similar to the incident which he alleges occurred. He has not established municipal liability through this allegation of a single incident of excessive force. We conclude the trial court was correct in directing a verdict in favor of City.

## II. TRIAL COURT'S INSTRUCTION ON SPECIFIC INTENT WITH RESPECT TO § 1983 CLAIM.

■ "When reviewing jury instructions, we look at all the instructions as a whole

1. The plurality opinion (four Justices) in *Tuttle* held:
   Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.... [W]here the policy relied upon is not itself unconstitutional, considerably more

proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.
*Id.,* 471 U.S. at 823–24, 105 S.Ct. at 2436, 85 L.Ed.2d at 804 (footnotes omitted). Darrow has not asserted the existence of any unconstitutional municipal policy.

and, if they provided a full and correct statement of the law applicable to the case, the instructions are not erroneous." *First W. Bank, Sturgis v. Livestock Yards,* 466 N.W.2d 853, 858 (S.D.1991). *Accord Stormo v. Strong,* 469 N.W.2d 816, 825 (S.D. 1991); *Frazier v. Norton,* 334 N.W.2d 865, 870 (S.D.1983). Darrow must prove not only error in the instructions, but " 'prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict[.]' " *Stormo,* 469 N.W.2d at 825 (quoting *State v. Weisenstein,* 367 N.W.2d 201, 206 (S.D.1985)).

■ Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443, 453–54 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433, 441 n. 3 (1979)). Thus, proper analysis of a § 1983 claim begins with identifying the specific constitutional right alleged to have been violated. *Graham,* 490 U.S. at 394, 109 S.Ct. at 1870, 104 L.Ed.2d at 454. *See Bivens v. Six Unknown Fed. Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

In his complaint, Darrow alleged that as a result of Schumacher's actions he was deprived of "his rights to freedom from the use of excessive and unreasonable force, freedom from a deprivation of liberty without due process of law, and freedom from summary punishment under the United States Constitution." This allegation appeared to be based on rights granted by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. His proposed jury instructions for the § 1983 action were based on an allegation of excessive use of force which violated the Fourth Amendment's protection from unreasonable seizure and the Fourteenth Amendment's guarantee of substantive due process.

The trial court instructed the jury on the § 1983 action in the following manner:

Trial Court's Instruction No. 10

The Federal Civil Rights Act under which plaintiff brings this suit was enacted by Congress to enforce the Fourteenth Amendment to the United State Constitution. The Fourteenth Amendment to the Constitution provides that:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

You are instructed as a matter of law that under the [C]onstitution of the United States every citizen has the right to his liberty, that is, the right not to be arrested without due process of law. Every person also has the constitutional right not to be subjected to unreasonable force while being arrested by a law enforcement officer, even though such arrest is otherwise made in accordance with due process of law.

Trial Court's Instruction No. 11

In order to prove his claim of violation of [his] civil rights ..., the burden is upon [Darrow] to establish by a preponderance of the evidence each of the following elements:

First: That [Schumacher] knowingly and wilfully performed acts which operated to deprive [Darrow] of one or more of his constitutional rights ... by using excessive force against [Darrow] during the course of his arrest.

. . . .

Trial Court's Instruction No. 12

An act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

The purpose of adding the word 'knowingly' is to insure that no one will be held responsible for an act done because of mistake, or accident, or other innocent reasons.

As stated before, with respect to allegations such as made in this case, specific intent must be proved by a preponder-

ance of the evidence before [Darrow] can prevail.

In his appeal, Darrow claims the instructions were in error as there is no requirement at law of knowing or willful conduct or any other specific intent in order to sustain a § 1983 action. Darrow relies for this proposition on *Parratt v. Taylor* which concerns a violation of the Fourteenth Amendment's guarantee of due process; however, *Parratt* was later overruled in part. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664, 88 L.Ed.2d 662, 668 (1986) (*Parratt* dealt with the inadvertent loss of a prisoner's hobby kit as violating substantive due process). Defendant Schumacher also addresses the issue of the § 1983 jury instructions in terms of alleged deprivation of substantive due process under the Fourteenth Amendment.

We agree with Darrow to the extent that specific intent on the part of Schumacher was not part of the proper analysis in this case. The parties argued and briefed—and the jury was instructed under—the wrong standard for considering a § 1983 claim based on alleged excessive use of force.

The United States Supreme Court has stated:

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one involving the protection of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures" of the person.... Today we make explicit what was implicit in *Garner's* analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

*Graham,* 490 U.S. at 394–95, 109 S.Ct. at 1871, 104 L.Ed.2d at 454 (citing *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

■ In Darrow's case, the § 1983 cause of action is based solely on an allegation of excessive use of force by Schumacher in arresting Darrow, a free citizen. Therefore, the only analysis to be applied is based on the Fourth Amendment, even through the complaint alleges other constitutional rights were violated by the same conduct. The Court said in *Graham:*

> Though the complaint alleged violations of both the Fourth Amendment and the Due Process Clause, ... we analyzed the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person[.]

*Graham,* 490 U.S. at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454 (citing *Garner,* 471 U.S. at 7–8, 105 S.Ct. at 1699–1700, 85 L.Ed.2d at 7–8). Similarly, the Eighth Circuit Court of Appeals has held excessive force claims must be analyzed in light of the Fourth Amendment's objective reasonableness standard. *Gainor v. Rogers,* 973 F.2d 1379, 1387 (8th Cir.1992); *Robinson v. City of St. Charles, Mo.,* 972 F.2d 974, 976 (8th Cir.1992).

The objective reasonableness standard "is not capable of precise definition or mechanical application," but must be viewed from the perspective of a reasonable officer at the location. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871, 104 L.Ed.2d at 455 (citing *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447, 481 (1979)). In *Graham,* the Court made clear that intent on the part of the arresting officer was not part of the objective reasonableness standard:

> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.... An officer's evil intentions will

not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456 (citing *Scott v. United States*, 436 US. 128, 137–39, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168, 177–78 (1978)).[2]

■ Clearly, under *Graham*, the jury instruction on specific intent should not have been given. However, we look at jury instructions as a whole to determine whether error was committed. *Livestock Yards*, 466 N.W.2d at 858; *Stormo*, 469 N.W.2d at 825. Here, the jury was given separate instructions and ballots as to each count charged. The court instructed the jury on use of excessive force as follows:

Trial Court's Instruction No. 5

South Dakota law provides that to use or attempt to offer to use force or violence upon or toward the person of another is not unlawful when committed by a law enforcement officer in the exercise of his lawful authority to effect the arrest of another person, providing it is reasonable under the circumstances.

Trial Court's Instruction No. 5A

Plaintiff claims that he was subjected to excessive force by the defendant in effecting his arrest. In that regard, you are instructed that every person has the right not to be subjected to unreasonable or excessive force while being arrested by a law enforcement officer, even though such arrest is otherwise made in accordance with due process of law. On the other hand, in making a lawful arrest an officer has the right to use such force as is necessary under the circumstances to effect the arrest. Whether or not the force used in making an arrest was unnecessary, unreasonable or violent is an issue to be determined by you in light of all the surrounding circumstances, on the basis of that degree of force a reasonable and prudent officer would have applied in effecting the arrest under the circumstances disclosed in this case.

The trial court's instructions on use of excessive force in an arrest sets forth the same objective reasonableness standard the Supreme Court requires for Fourth Amendment analysis of § 1983 claims. The jury, under instructions correctly stating the objective reasonableness standard, specifically found for Schumacher as to count I on excessive use of force. As § 1983 is only a method for vindicating federal rights and does not grant substantive rights itself, Darrow's § 1983 claim was premised upon the allegation of a violation of the Fourth Amendment. Where the jury specifically found no excessive use of force, there was no violation of the Fourth Amendment and thus, no foundation upon which to base any recovery under § 1983.

Taken as a whole, the jury instructions provided a correct statement of the law as to excessive use of force under the Fourth Amendment. We therefore affirm the trial court on this issue.

### III. EVIDENCE REGARDING PRIOR EMPLOYMENT.

■ Schumacher was previously employed with Wharf as its safety security coordinator. At trial, Darrow sought to introduce evidence Schumacher had difficulty in supervising employees under his charge and in exercising authority over them. The trial court disallowed this evidence, granting Schumacher's motion in limine precluding Darrow "from offering any evidence upon any manner referring to ... Schumacher's prior employment with Wharf Mining Company." Darrow asserts the evidence was admissible under SDCL 19–12–5 (Rule 404(b) (prior bad acts evidence)) for the limited purpose of establishing intent and knowledge and under SDCL 19–12–8 (Rule 406) (habit evidence). We are not convinced.

---

**2.** We note the United States Supreme Court has not foreclosed consideration of intent in assessing the credibility of an officer's account when relevant to the defense of qualified immunity. *Graham*, 490 U.S. at 399 n. 12, 109 S.Ct. at 1873 n. 12, 104 L.Ed.2d at 457 n. 12 (citing *Scott*, 436 U.S. at 139 n. 13, 98 S.Ct. at 1724 n. 13, 56 L.Ed.2d at 178 n. 13); *Yang v. Murphy*, 796 F.Supp. 1245, 1250 (D.Minn.1992). Qualified immunity is not at issue in Darrow's appeal.

■ "The trial court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion." *Stormo,* 469 N.W.2d at 820; *Zepp v. Hofmann,* 444 N.W.2d 28, 31 (S.D. 1989). *Accord Opp v. Nieuwsma,* 458 N.W.2d 352, 357 (S.D.1990); *Bank of Toronto v. Lengkeek,* 436 N.W.2d 271, 277 (S.D.1989). The question of whether evidence is immaterial, conjectural or remote must generally be left to the sound discretion of the trial court. *Magbuhat v. Kovarik,* 382 N.W.2d 43, 47 (S.D.1986); *Durham v. Ciba–Geigy Corp.,* 315 N.W.2d 696, 699 (S.D.1982).

Schumacher's duties as Wharf's safety security coordinator entailed the supervising of employees in the security department, and scheduling, training and supervising Wharf's Safety Department. Schumacher supervised from six to fourteen employees. This position was Schumacher's first position in a supervisory role. During Schumacher's two-year tenure as a supervisor at Wharf, he experienced problems. In performance appraisals, Schumacher's supervisor at Wharf concluded he had difficulty in exercising management skills over employees under his charge. Specifically, he had difficulty in delegating and exercising authority over other employees and was too authoritarian in discharging his supervisory responsibilities. One particular instance occurred in which Schumacher used *verbally* abusive language in response to another employee who was also using abusive language.

At no time, were any allegations of use of excessive force brought during Schumacher's stint with Wharf. As such, the evidence Darrow sought to introduce did not rise to the level of a "prior bad act," since a prior act must be "reasonably related to the offending conduct." *State v. Lodermeier,* 481 N.W.2d 614, 625 (S.D. 1992); *State v. Klein,* 444 N.W.2d 16, 19

(S.D.1989). Nor do we believe the evidence was relevant to the causes of action alleged by Darrow—excessive use of force, emotional distress, false arrest and imprisonment, and a violation of 42 U.S.C. § 1983.

We do not find persuasive Darrow's argument that Schumacher engaged in a "habit or routine practice of authoritarian behavior toward those employees under his charge." In John W. Larson, *South Dakota Evidence* § 406.1, 190 (1991), it is noted that:

An individual's disposition relative to peacefulness, drunkenness, or observance of religious mandates is too general to be a habit, these matters relating more to character.

■ Finally, prior bad acts evidence is not admissible when considering an allegation of use of excessive force as intent of the actor is not part of the analysis under the Fourth Amendment's objective reasonableness standard. *Graham,* 490 U.S. at 397, 109 S.Ct. at 1873, 104 L.Ed.2d at 456. The Eighth Circuit Court of Appeals has stated:

Plaintiffs argue that the district court should have admitted the officers' personnel records at trial because this evidence of prior bad acts was relevant to show "whether the defendant police officers acted with reason and control or maliciously and sadistically for the purpose of causing harm." This argument is foreclosed by the Supreme Court's recent decision in *Graham* [citations omitted].

*Robinson,* 972 F.2d at 976; *See also Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1080–81 (8th Cir.1990).

We hold the trial court did not abuse its discretion in refusing to admit evidence concerning Schumacher's prior employment with Wharf.[3]

---

**3.** It is doubtful Darrow has even preserved this matter for appellate review. "An offer of proof is a condition precedent to having this court pass upon an allegedly erroneous ruling on the exclusion of evidence." *Hedges v. Hedges,* 87 S.D. 425, 432, 209 N.W.2d 660, 664 (1973); *Roach v. Snedigar,* 76 S.D. 63, 68, 72 N.W.2d 427, 430 (1955). We have stated in the criminal

context that "reversible error cannot be predicated upon the denial of a motion in limine and that failure to specifically object to the evidence during trial forecloses complaint on the issue on appeal." *State v. Svihl,* 490 N.W.2d 269, 272 (S.D.1992); *State v. Gallipo,* 460 N.W.2d 739, 743 (S.D.1990). *State v. Olson,* 408 N.W.2d 748, 751 (S.D.1987). After Schumacher's motion in

## IV. TRIAL COURT'S DISALLOWANCE OF EVIDENCE OF ACQUITTAL.

▮▮▮▮▮ The trial court instructed the jury:

Trial Court's Instruction No. 9

In a false arrest case, such as this one, the guilt or innocence of the party who is arrested is not relevant. In reaching your decision in this case, you are not to concern yourself with whether [Darrow] was eventually found not guilty or guilty of the alleged offense of obstructing a law enforcement officer for which [Darrow] was arrested by [Schumacher].

Darrow objected to this instruction. The tort of false imprisonment involves an *unlawful* detention or restraint of a person against his or her will. *Tredway v. Birks*, 59 S.D. 649, 652, 242 N.W. 590, 591 (1932); 32 Am.Jur.2d *False Imprisonment* § 5 (1982). *Accord* California Jury Instructions–Civil § 7.61 (1986). An action for false imprisonment cannot be maintained if the imprisonment was under legal authority. *Tredway*, 59 S.D. at 653, 242 N.W. at 591; 32 Am.Jur.2d at § 96. Obstructing a law enforcement officer engaged in the performance of his duties is a class 1 misdemeanor. SDCL 22–11–6. SDCL 23A–3–2 provides:

> A law enforcement officer may, without a warrant, arrest a person:
>
> (1) For a public offense, other than a petty offense, committed or attempted in his presence; or
>
> (2) Upon probable cause that a felony or Class 1 misdemeanor has been committed and the person arrested committed it, although not in the officer's presence.

Thus, "[t]he real issue is whether ... there was probable cause for [the plaintiff's arrest] ... It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party.... The want of probable cause is essential[.]" *Richardson v. Dybedahl* (*Richardson II*), 14 S.D. 126, 131–32, 84 N.W. 486, 487 (1900); *Accord* 32 Am.Jur.2d

§ 99. The probable cause which will justify an arrest need not be constitutional probable cause, rather it is sufficient if the facts would lead a reasonable person to believe a crime has been committed, regardless of whether the party is later found innocent. *Id. Accord Richardson II*, 84 N.W. at 487. Finally, liability for false imprisonment is unaffected by the truth of the matter charged and upon which an arrest has been made. 32 Am.Jur.2d § 100. Thus, the fact Darrow was not tried on the original charge of interfering with a police officer and was subsequently acquitted on the charge of disorderly conduct is not relevant. *Id.* The trial court correctly instructed the jury.

We affirm.

MILLER, C.J., and AMUNDSON, J., concur.

SABERS and HENDERSON, JJ., concur in part and dissent in part.

SABERS, Justice (concurring in part and dissenting in part).

Excessive force claims against law enforcement officers "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under [the Fourteenth 'Amendment's] substantive due process standard." *Graham*, 490 U.S. at 388, 109 S.Ct. at 1867, 104 L.Ed.2d at 450. And yet, the jury was instructed in Instruction No. 10 that:

> [t]he Federal Civil Rights Act under which plaintiff brings this suit was enacted by Congress to enforce the *Fourteenth Amendment* to the United States Constitution.... You are instructed as a matter of law that under the constitution of the United States every citizen has the right to his liberty, that is, the right not to be arrested without due process of law. (Emphasis added.)

This inaccurate application of the Fourteenth Amendment to Darrow's § 1983 excessive force claim was further compound-

limine was granted, the record does not disclose any attempt by Darrow to introduce evidence

concerning Schumacher's past employment.

ed by Instruction No. 11, which provided in part;

In order to prove his claim of violation of the Plaintiff's civil rights (federal claim), the burden is upon the Plaintiff to establish by a preponderance of the evidence each of the following elements:

First: That the Defendant knowingly and wilfully performed acts which operated to deprive the Plaintiff of one or more of his constitutional rights, as defined and explained in these instructions, by using excessive force against the Plaintiff during the course of his arrest....

and Instruction No. 12, which provided in part:

An act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.... *As stated before, with respect to allegations such as made in this case, specific intent must be proved by a preponderance of the evidence before Plaintiff can prevail.* (Emphasis added.)

These instructions, especially the latter underlined portion, are the antithesis of the Fourth Amendment's "objective reasonableness" standard. An officer's "underlying intent or motivation" has no place in an accurate analysis of an excessive force claim under 42 U.S.C. § 1983.

[T]he "reasonableness" inquiry in an excessive force case is ... whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.... An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Robinson*, 972 F.2d 974, 976 (citations omitted) (citing *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456).

"When reviewing jury instructions, we look at all the instructions as a whole and, *if they provide a full and correct statement of the law applicable to the case*, the instructions are not erroneous." *First Western Bank, Sturgis, v. Livestock Yards Co.*, 466 N.W.2d 853, 858 (S.D.1991) (emphasis added) (citation omitted). Even though jury instructions are viewed as a whole in determining whether prejudicial error resulted, they must still accurately state the law as a whole to find the error harmless. It is impossible to conclude that this erroneous specific intent instruction was harmless. In fact, it appears that proof of specific intent by a preponderance of the evidence was a condition precedent before there could be *any* recovery under *any* theory, not just under the § 1983 cause of action. Instruction 12 expressly provided: "As stated before, with respect to allegations such as made in this case, specific intent must be proved by a preponderance of the evidence before Plaintiff can prevail." In other words, with respect to all allegations in *this case*, not just *this theory*.

How can we be sure the jury *did not* read this instruction in this manner? "Giving an incorrect instruction is not obviated by giving a correct one on the same issue since it is impossible to tell whether the jury followed the correct guide or the incorrect one." *Wheatley v. Heideman*, 251 Iowa 695, 102 N.W.2d 343, 354 (1960) (citations omitted). It seems obvious to me that under these instructions, Darrow had to prove that Schumacher had specific intent to use excessive force before he could prevail. This is contrary to federal and state law. *Graham*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443; *Robinson*, 972 F.2d 974; *Frey v. Kouf*, 484 N.W.2d 864, 867–68 (S.D.1992); *State v. Balint*, 426 N.W.2d 316, 317–18 (S.D.1988).

Darrow should not be required to prove that Schumacher had the *specific intent* to deprive him of one or more of his constitutional rights through the use of excessive force against him during the course of his arrest. At a minimum, we should reverse and remand the § 1983 cause of action per *Graham*, where the Supreme Court vacated and remanded for reconsideration under the proper Fourth Amendment standard.

Where the instructions are misleading and conflicting on a material issue, a new trial should ordinarily be granted unless the error is cured by withdrawal of the defective instruction. But an erroneous statement of the law clearly applicable to the facts of the case is not cured by subsequent correct instructions which do not specifically correct the misstatement. *Lindstrom v. Yellow Taxi Co. of Minneapolis,* 298 Minn. 224, 214 N.W.2d 672, 676 (1974) (citation omitted).

HENDERSON, Justice (concurring in part; dissenting in part).

Without question, this jury was instructed wrong on a critical issue of law for, over Darrow's objection, the jury was instructed that *specific intent* on the part of Schumacher had to be established by a preponderance of evidence before Darrow could prevail on his § 1983 claim against Schumacher (Instruction No. 12).

Majority admits this for it expresses: "Clearly, under *Graham,* the jury instruction on specific intent should not have been given." *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Majority then tries to wipe this error away by using an old point of law in this Court which expresses that: "We must look at the jury instructions as a whole to determine if error was committed." Pre-

cisely, that's the point. However, majority fails to look at the jury instructions "as a whole." In addition to jury Instruction No. 10, jury Instruction No. 11 required Darrow to establish "knowingly" and "wilfully performed acts." Jury Instruction No. 12 expanded upon "knowingly" and "intentionally" and again required Darrow to prove "specific intent." Thus, there were three bad instructions and "as a whole," error was committed.

Majority fails to consider the following: Prejudicial error is that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it. These bad instructions, in all probability, had some effect upon the final result and affected Darrow's rights. For authority on this subject, and to stand by precedent in this Court, I refer to these past decisions: *K & E Land & Cattle, Inc. v. Mayer,* 330 N.W.2d 529 (S.D.1983); *Larson v. Locken,* 262 N.W.2d 752 (S.D.1978); and *State Hwy. Comm'n. v. Beets,* 88 S.D. 536, 224 N.W.2d 567 (1974).